144 So. 612

**AMERICAN CREOSOTE WORKS, Inc., v. CITY OF MONROE et al.**

No. 31646.

Oct. 31, 1932.

Rehearing Denied Nov. 28, 1932.

 

Wm. B. Grant, of New Orleans, and Cas Moss, of Winnfield, for appellant.

H. H. Russell, of Monroe, for appellee City of Monroe.

Shotwell & Brown, of Monroe, for appellees Electric Appliance Co., and Lawrence Himel, trustee.

ST. PAUL, J.

The Electric Appliance Company (the et al. in the caption) is a corporation *domiciled* in the parish of Orleans; *was*, at the time this suit began, in the hands of a receiver appointed by the civil district court for the parish of Orleans; and *is now* in bankruptcy before the United States District Court for the Eastern District of Louisiana.

The receiver first, and now the trustee in bankruptcy, admit, and do not deny, that said Electric Appliance Company is indebted to plaintiff in the sum of $3,609.28, less a dividend of $252.69 paid it by the receiver (balance due, $3,356.59); being the unpaid price of certain creosoted poles sold to it by plaintiff, and by it in turn sold to the city of Monroe. And the city of Monroe (a mere stakeholder between plaintiff and the trustee in bankruptcy, who are both claiming the fund) holds, and admits that it still owes, the unpaid price of the poles which it purchased from the Electric Appliance Company and has not paid for, to wit, the sum of $2,836.69.

**I.**

We do not understand plaintiff as contending that the district court at Monroe had jurisdiction to render any *general* or *personal* judgment against the Electric Appliance Company. For, all *technical* considerations apart,

It is manifest from the foregoing recital that any general or personal judgment by *that* court against the Electric Appliance Company, now in the hands of the bankruptcy court, would be no more than a vain and unprofitable gesture.

On the other hand, we do not understand the trustee in bankruptcy to dispute the proposition that the district court at Monroe has even *exclusive* jurisdiction to adjudicate to whom the fund in the hands of the city of Monroe shall be turned over; whether to the trustee in bankruptcy for the benefit of all the creditors of the Electric Appliance Company, or to plaintiff as entitled thereto by reason of some special lien and superior claim thereon, preferable to that of the trustee.

So that the only *substantial* issue here involved is whether plaintiff has such a claim.

If it has, then the trial judge erred in refusing to enforce it; otherwise his judgment is correct.

## II.

Plaintiff states its case (in its brief) substantially as follows: Some time in the spring of 1930 the city of Monroe sought bids for a supply of creosoted poles for use in the construction and repair of its municipal lighting system. There were four bids submitted, and the contract was awarded to the Electric Appliance Company as the lowest bidder. This latter placed the order with plaintiff, who delivered the poles to the city's Electric Light & Waterworks on or about June 26, 1930. The poles were used by the city, the majority in rebuilding electric light lines and some on new lines. The Electric Appliance Company failed to pay for the poles; and on November 10, 1930, plaintiff recorded its attested itemized claim in the proper office, and served a copy thereof on the city.

## III.

To this the defendants reply substantially (in their brief), and the record supports them as to the facts, that: Plaintiff argues that because there was bidding and a contract, and the order for the poles set forth certain specifications as to size, roof, and creosoting, these features distinguish this case from the case of J. Watts Kearny & Sons v. Perry et al., 174 La. 411, 141 So. 13, 14. But there is nothing showing that these poles were wanted for any special purpose, or that they were to go into any particular work. On the other hand, it is shown that they were ordered by the city for *stock;* that some were used for new work, some were used for replacements, some were burned in the railroad yards before the city could remove them, and some are still on hand.

## IV.

Mutatis mutandis, this case is no different from J. Watts Kearny & Sons v. Perry et al., supra. If there be any difference, it is only that the claim of Kearny & Sons was stronger than that of this plaintiff; for they had furnished their material to those who, in turn, had furnished it to a contractor to be placed at a particular place in a designated work actually under construction at the time under a special contract for such work; and the material thus furnished had been placed at the particular point agreed upon, and had actually all been used in the work and at that particular point.

Kearny & Sons had sold gravel to the Weaver Sand Company, who in turn had sold and

delivered it to Perry, the contractor, placing it (as had been directed) along the line of the road then under construction for the highway commission. Weaver Sand Company having failed to pay for the gravel, Kearny & Sons sought to hold Perry, the contractor, the Union Indemnity Company, surety on his bond, and the highway commission, each and all of them, under alleged provisions of Act No. 224 of 1918 relative to the construction of public works.

The highway commission, the Union Indemnity Company, and Perry, the contractor, all filed exceptions of no cause of action, which were sustained by the trial court and by this court.

In passing upon these exceptions this court said:

"In support of the exceptions of no right or cause of action counsel for defendants contend that the obligations of a contractor, under Act No. 224 of 1918, for the construction of a public work, the obligations of his surety, and those of the public authority for which the work is done, to pay for labor and materials used in the work, are by law restricted to creditors of the contractor and his subcontractors, and do not extend to creditors of materialmen, and that, since plaintiff is merely a furnisher of material to another furnisher of material, it is without any right of action against defendants. * * *

"*The plain terms of this section [section 1 of Act No. 224 of 1918] restrict its operation to creditors of the contractor and of subscontractors.* [Italics by this writer.] * * * In the instant case, plaintiff, J. Watts Kearny & Sons, is a materialman, who furnished materials to the Weaver Sand Company, Inc., another materialman, who sold and

delivered the same materials to W. O. Perry, contractor. * * * Weaver Sand Company, Inc., was not a subcontractor, as it had not contracted with Perry, the contractor, to do any work embraced in his original contract with the Louisiana highway commission. Plaintiff, therefore, is not a creditor of the contractor, W. O. Perry, nor of any subcontractor, and is not entitled to the protection of Act No. 224 of 1918.

"The conclusion we have reached is supported by the following authorities: [Citing them.] * * *

"Plaintiff's petition was amended to declare * * * etc. [But]

"The only new fact alleged in the amended petition is that the Weaver Sand Company, Inc., agreed to deliver the sand [gravel] piled along the roadside embankment at regular intervals [every fifty feet]. That agreement was not an undertaking to perform any part of the original contract with [of] Perry, the contractor, but the delivery of the gravel was a mere incident of the sale of same.

"The amendment was properly allowed, as the agreement additionally alleged did not make plaintiff [Weaver?] a subcontractor."

### V.

We adhere to the ruling thus made; we think it sound and correct in all respects. The section above referred to (section 1 of Act No. 224 of 1918) protects, and was *meant* to protect, only the creditors of *contractors* and subcontractors. Otherwise where would the far-flung "protection" of the statute cease? If the furnishers of material to materialmen, ad infinitum, are successively to have their recourse against the contractor, and the contractor's surety, and the work, and the owner

of the work, *then* it will be all an endless chain, for we know by the (doubtless truthful) claim of a certain public utility that it requires the bringing together of the products (both crude and finished) of some three score or more nations, regions, and climes, to produce merely one small part of one certain small household necessity.

### VI.

And whilst unquestionably a sale is *a contract*, since every *agreement* binding in law is also a contract; yet the *contractor* whom the law intends by Act No. 229 of 1916 and Act No. 224 of 1918, is one who constructs for another some work of fixed and permanent nature, which can neither be kept nor disposed of, but must be surrendered to him for whom the work was done; and a subcontractor is one who undertakes to do for the contractor part of the work which the contractor has undertaken.

We see in this case no contractor or subcontractor, but simply a sale and a resale. And we think the trial judge did not err in disposing of the case as he did.

### Decree.

For the reasons assigned, the judgment appealed from is affirmed.