124 So.2d 211 (1960)
JESSE F. HEARD & SONS et al., Plaintiff-Appellee,
v.
SOUTHWEST STEEL PRODUCTS et al., Defendant-Appellant.
No. 9269.
Court of Appeal of Louisiana, Second Circuit.
October 27, 1960.
Rehearing Denied December 1, 1960.
Certiorari Denied January 9, 1961.
*212 Diehlmann C. Bernhardt, Monroe, Butler, Binion, Rice & Cook, Houston, Tex., for appellants.
Howell H. Heard, West Monroe, for appellees.
GLADNEY, Judge.
This suit was instituted for the purpose of canceling and erasing from the mortgage records of Lincoln Parish, Louisiana, an affidavit of materialman's lien filed pursuant to the provisions of LSA-R.S. 38:2241 to 38:2247, and to recover damages for the wrongful filing thereof. Jesse F. Heard & Sons (hereinafter sometimes called Heard) and Employer's Liability Assurance Corporation, Ltd., plaintiffs herein, name as defendants Southwest Steel Products, R. *213 Boatner Howell, Jr. as Trustee in Bankruptcy for Industrial Fabricators, Inc., and L. C. Ledbetter, Clerk of Court of Lincoln Parish. Following trial, judgment was rendered favorable to plaintiffs, directing the cancellation of the recorded affidavit but rejecting plaintiffs' demand for damages. An appeal was perfected to this court by Southwest Steel Products.
The following circumstances, concerning which there is no dispute, are pertinent to a proper resolution of the case: On September 9, 1958, Jesse F. Heard & Sons, a partnership engaged in the building and construction business, entered into a written contract with the Louisiana State Board of Education, wherein it was agreed that for the price of $584,446 the contractor would furnish all labor and materials necessary for the construction of a Student Union Building at Grambling College, in Lincoln Parish, Louisiana. In accordance with the statute regulating the claims of materialmen and laborers on public works (LSA-R.S. 38:2241 et seq.), the contractor executed a surety bond with Employer's Assurance Corporation, Ltd. as surety, which bond was duly recorded in the mortgage records of Lincoln Parish. The partnership then entered into a contract with Industrial Fabricators, Inc., whereby the latter agreed to furnish certain structural steel and miscellaneous items requiring special fabrication in order to comply with the detailed architectural plans and specifications. This agreement was executed on a printed form customarily used by Heard for subcontractors. Heard, however, contends such form was used in this instance through error. Industrial Fabricators, Inc., in turn, contracted with Southwest Steel Products for the latter to fabricate in its own shop and deliver to the job site at Grambling College, all of the joists and long spans. After delivery by Southwest Steel Products the materials were incorporated into the structure by O. C. Portman, plaintiff's subcontractor for the erection and assembly of the steel. Neither Industrial Fabricators, Inc., nor Southwest Steel Products engaged in any work on the structure itself.
On June 25, 1959, Industrial Fabricators, Inc., was adjudicated a bankrupt, and at that time was indebted to Southwest Steel Products for $4,591 for the materials fabricated and delivered. On July 3, 1959, Southwest Steel Products filed its affidavit of lien for the balance due it, together with a claim for twenty-five per cent as attorney's fees and $100 as costs for preparation in filing of the lien.
Appellant assigns error based on two propositions: (1) that Industrial Fabricators, Inc., was a subcontractor by virtue of the express written contract with Heard; and (2) that one who specially fabricates steel for a given project is a subcontractor regardless of where the work is performed.
The first contention impresses us as being without merit for two reasons: first, because the petition alleges the form employed was the result of an error, proof of which was established to our satisfaction and that of the trier of facts; and second, whether or not one is a subcontractor within the purview of the lien statute must be resolved from essential factors of legal significance other than simple designation as such by the prime contractor.
The other point advanced in argument by counsel for Southwest Steel Products is the primary issue for this court's disposition. Was the relationship of Industrial Fabricators, Inc., and Heard that of subcontractor and contractor? If so, the proper recordation of its claim by Southwest Products gave rise to a valid and subsisting lien by virtue of the provisions of LSA-R.S. 38:2242. Contrariwise, if the relationship of said parties was simply that of vendor and vendee, the statute does not create a lien in favor of Southwest Products.
As heretofore disclosed, Industrial Fabricators, Inc., agreed with Heard, the prime contractor, to furnish specially fabricated steel according to specifications and deliver such finished material to the job site. This *214 it did through its agent or contractor, Southwest Steel Products.
The learned judge a quo has supported his judgment by lengthy, sound, written reasons which are in the record. After a careful study of the testimony and the documentary evidence adduced, we are of the opinion he has clearly defined the issues, made correct factual findings, and sufficiently reviewed pertinent jurisprudence. We find ourselves wholly in accord with the judgment rendered by him, and have decided to adopt, with some omissions, his reasons. They are as follows, viz.:
"So the important issue which is presented to the Court in this case is to determine the relationship between Industrial Fabricators, Inc. and Jesse F. Heard and Sons, for if Industrial Fabricators, Inc. is held to be simply a materialman and not a sub-contractor, the result will be that Southwest Steel Products is not legally entitled to a lien against the public building. On the other hand, if Industrial Fabricators, Inc. is legally a sub-contractor, then the Southwest Steel Products is entitled to a legal and valid lien against the building and the project.
"On the trial of the case, objection was made to the admissibility of any evidence which sought to contradict or vary the terms of the written agreement between Jesse F. Heard and Sons and Industrial Fabricators, Inc. But by virtue of the fact that there was a proper allegation of error, the Court was of the opinion that such testimony was admissible and the testimony was admitted and it was very definitely proven and established that Jesse F. Heard and Sons actually committed error in using the form which it designated as a subcontractor form instead of its usual form for the purchase of materials to be used in such projects.
"Furthermore, the testimony was admissible, in the opinion of the Court, for the reason that the contract itself was rather ambiguous since it contained the following stipulation, `It is agreed that the following is the materials to be furnished and the work to be done by sub-contractor under the sub-contract, to-wit: Structural steel and miscellaneous items including stone anchors, miscellaneous bolts and anchors according to plans and specifications.' So that from the contract itself, it may be observed that apparently there was no intention or understanding on the part of the parties to such agreement that Industrial Fabricators, Inc. were to do any more than simply furnish the structural steel and miscellaneous items, including the stone anchors, bolts and other items according to the plans and specifications. In fact, the testimony shows that both of the parties to the agreement, that is, Jesse F. Heard and Sons and Industrial Fabricators, Inc., apparently treated the agreement simply as an agreement for the purchase of materials rather than any agreement that embodied therein the obligation on the part of Industrial Fabricators, Inc. to actually do any work or perform any labor in the installation or erection of any of the materials on the job site.

* * * * * *
"We come finally to go into the principal and main question that is actually presented in this case. This is whether one who actually delivers steel products to a general contractor at the job site which steel products have been fabricated and constructed to meet certain definite specifications for the job for which such materials are intended, is a materialman or a sub-contractor within the meaning of the law. In connection with that decision, we need first, possibly, to show that one who supplies materials to either the contractor or a sub-contractor is entitled to a lien under the Public Works Act, which is LSA-R.S. 38:2241 et seq. It has been held in several cases that one who furnishes material to a materialman which materials are actually used in and become a part of a structure is not entitled to a lien under this section of the Revised Statutes. A portion of R.S. 38:2241 reads as follows:

*215 "`He shall require of the contractor a bond with good, solvent, and sufficient surety in a sum not less than fifty per cent of the contract price for the faithful performance of the contract with an additional obligation for the payment by the contractor or subcontractor for all work done, labor performed, or material or supplies furnished for the construction, alteration or repair of any public works, or for furnishing materials or supplies for use in machines in the construction, alteration, or repair of any public works.'
"Under the decisions in the case of J. Watts Kearney [Kearny] and Sons v. Perry, 174 La. 411, 141 So. 13, and in the case of American Creosote Works v. City of Monroe, 175 La. 905, 144 So. 612, it seems to have become the settled jurisprudence of this State that a general contractor and a surety are obligated to the creditors of sub-contractors in connection with any public works undertaken by the general contractor, but that the general contractor and his surety are not responsible to the creditors of materialmen on the job.
"In the principal issue that is raised by this case, that is, whether a person occupying the position that Industrial Fabricators, Inc. occupy and the position that Southwest Steel Products occupy, we find a problem presented which apparently has never been thoroughly settled in this State. The nearest case in Louisiana which the Court has been able to find dealing with the problem is the case of American Creosote Works v. City of Monroe, 144 So. 612. That case was a case in which the City of Monroe advertised for bids for the supplying of creosote poles to be used in the construction, repairing, alteration and so on of its public utility system in the City of Monroe. The plans and specifications for those poles were given and the bidder thereof was required to meet the specifications as required. However, the poles themselves were to become a portion of the general stock of such items of the City of Monroe and were to be used as if and when needed in the work for the City of Monroe, so that it can be seen in the beginning that although these poles were according to plans and specifications that they were unlike the steel that was required for the actual construction of the building at Grambling that is under consideration in the case now before the Court.
"In the American Creosote case the Court held that the suppliers of these poles were simply materialmen and the American Creosote Company had actually supplied the poles for the person that had the contract with the City of Monroe and that contractor having gone into bankruptcy, the American Creosote Works found itself in the same position that the Southwest Steel Products finds itself in this case.
"In that case, the Court made the following observations:
"`But there is nothing showing that these poles were wanted for any special purpose or that they were to go into any particular work. On the other hand, it is shown that they were ordered by the City for stock; that some were used for new work, some were used for replacements and some were burned in the railroad yard before the City could remove them, some are still on hand.'
"Which quotation shows that these poles were not designed especially for any particular purpose or for any particular place or for any particular work in the City of Monroe, which would, if course, make considerable difference between that case and the case that is now before the Court for it is very evident and the evidence establishes that the steel girders, long spans and possibly some other phases of the structural steel were actually fabricated by Southwest Steel Products to exact specifications according to the plans and specifications of the contractor; that they were designed specifically for the building that the contractor *216 had engaged to erect and even that they were designed to fit certain parts or in certain places within the building itself. Furthermore, it was shown that they would be, as fabricated and constructed, almost useless, if not entirely so, for any other structure or building. It would be accidental if another building would require some of the beams and long spans of the exact kind and dimensions.
"There seems to be in consideration of the case of American Creosote Works v. City of Monroe some language, however, which indicated that the Courts of this State would not favor stretching the protection provided for in the law for suppliers of material any further than is actually contemplated by the statute itself and in that connection the American Creosote case has these additional quotations:
"`The section above referred to (Section 1 of Act No. 224 of 1918) protects, and was meant to protect, only the creditors of contractors and subcontractors. Otherwise, where would the far-flung "protection" of the statute cease? If the furnishers of material to materialmen, ad infinitum, are successively to have their recourse against the contractor, and the contractor's surety, and the work, and the owner of the work, then it will be all an endless chain, for we know by the (doubtless truthful) claim of a certain public utility that it requires the bringing together of the products (both crude and finished) of some three score or more nations, regions, and climes, to produce merely one small part of one certain small household necessity.'
"The decision goes on to further say:
"`And whilst unquestionably a sale is a contract, since every agreement binding in law is also a contract; yet the contractor whom the law intends by Act No. 229 of 1916 [LSA-R.S. 9:4801 et seq.] and Act No. 224 of 1918, is one who constructs for another some work of fixed and permanent nature, which can neither be kept nor disposed of, but must be surrendered to him for whom the work was done; and a subcontractor is one who undertakes to do for the contractor part of the work which the contractor has undertaken.'
"The decisions throughout the United States, and some of them are annotated in 25 ALR2d 1370, seem to be divided as to whether a supplier of material such as is involved in the case before the Court, where there is the necessity for fabrication or construction according to certain definite plans and specifications, constitutes the supplier of such material a contractor, sub-contractor or a materialman and it is interesting to read some of the decisions of the various Courts which have dealt with that problem.
"In the case of J. Coughlan & Sons v. John Carver & Company reported in the British Columbia Reports No. 20 at page 497 the Court dealt with the identical question and I quote in part therefrom as follows:
"`The respondents accepted an order from the contractors for steel beams, angles, channels and plates to be used by the contractors in the erection of the building. The different members were to be fashioned to meet specified requirements and were to be made ready to be placed and fastened together when required in construction. All that the respondents had to do was to be done at their factory, and nothing was to be done by them on or about the building itself. The material so made ready was to be delivered at the building site, where the respondents' connection with it ended. Their submission was that they were not mere "material men", to use the popular and convenient designation for those supplying material only, but were sub-contractors for work and material; that the fact that they had to expend labour on the material before delivery distinguishes their status from that of "material men", such, for instance, as merchants who supply hardware from their stock *217 in trade to a contractor. The distinction is too refined to be admissible. We held in Irvin v. Victoria Home Construction and Investment Co. (1913), 18 B.C. 318, that persons who contract with the principal contractors to do a portion of the work on the building itself, supplying the material with which to do it, are not mere material men, but are sub-contractors in the sense in which that term was employed in the Mechanics' Lien Act prior to the amendment giving a lien for materials, and hence, were not required to give notice prescribed by Section 6.'
"That case held that the supplier of steel beams, angles, channels and plates and so on made according to plans and specifications was simply a materialmen and not a sub-contractor and was not entitled under their law to a lien.
"Another interesting case is the case of Rudolph Hegener Company v. Frost et al., cited by the Appellate Court of Indiana and found in [60 Ind.App. 108] 108 N.E. Reporter 16. That was an action by a stair manufacturer claiming a mechanic's lien for the value of two flights of stairs manufactured for a special design expressly for the house which the owner was building and made according to certain size, shape, dimensions and so forth, which stairs were constructed in the appellant's factory in Chicago and delivered to the premises and were installed within the building itself by another. In that case the Court quoted from Phillips on Mechanic's Lien 3rd Addition, Section 51 as follows:
"`There is, however, a calculable distinction between a contract to erect and a contract toward the erection whether it be work or material. One who contracts to put up a building, or one of its leading divisions, as its brickwork or its woodwork is not a mere workman or a mere materialman. He is employed to construct or erect and not merely to work. It is, therefore, clear that a lumber dealer merely to furnish lumber, whether manufactured or not, is not a contractor for the erection of the building or any division of it. He is a materialman merely, or a workman if he works up his lumber into frames, doors and so forth and is not employed to erect or put up the building or any of its primary divisions.'
"This case also quoted from the case of Foster Lumber Company v. Sigma Chi Chapter House 49 Ind.App. 528 [97 N.E. 801], where one had contracted to do all of the stonework for a certain house according to certain plans and specifications and wherein the Court held
"`Nor do we think material ceases to be material when it is finished and ready for use',
"and in which case the Court in Indiana held that such persons were not entitled to a lien. This case furthermore cited from the case of Monroe v. Clark, 107 Me. 134 [77 A. 696, 30 L.R.A.,N.S., 82], in which the following quotation was made:
"`Where one contracts to furnish certain articles for a building and is to have no part in the erection of the building his employees have no lien for their labor in preparing and completing the articles. Their labor is in no proper sense performed "in the erection of the building."'
"And it was held that a person under such circumstances or one who had been employed to cut the stone according to the plans and specifications was not entitled to a lien. This case also cited from the case of Tracy v. Wetherell 165 Mass. [113] 115 [42 N.E. 497] as follows:
"`The contract under which the petitioners were to furnish and deliver certain articles of woodwork for a house "all prepared" in shapes like those in another house even if it necessitated special manufacture and called for things not to be found in the market which does not appear would have been satisfied by delivery of those articles by whomsoever prepared. However, likely it may have been the petitioners *218 would have to prepare the things themselves. The contract did not require them to do so. This being so, the contract was a contract for materials only and not a contract for labor and materials.'
"This case from Indiana goes on to state further:
"`Other cases upholding the same theory are Eisnor v. Diand [Dinand] 165 Mass. 116 [42 N.E. 498], Arnold v. Budlong 11 R.I. 561. Under these holdings we think Clinton must be regarded as a materialman and not a contractor, as a materialman Clinton would have had a right to enforce a mechanic's lien for the value of the stairs had his contract included the putting of the stairs in place, the attachment to the building, we believe he could have been called a contractor, but this is not the case.'
"The case of Matzinger et al. v. Harvard Lbr. Co. quoted in [115 Ohio St. 555] 155 N.E. 131 by the Supreme Court of Ohio involved a claim to a mechanic's lien for certain sashes, doors, cabinetwork, shelving and so on which were specially designed and constructed in accordance with detailed plans and specifications for installation in a certain building. These articles were specially made by the defendant in its own mill and were actually erected or placed within the building involved by another. The question presented was whether the defendant was a materialman or a sub-contractor. In that decision, the Court quoted from its own statute dealing with such matters which is similar to our own and reached the conclusion that the defendant was a materialman and not a sub-contractor. In that case the Court made this statement:
"`The construction of these statutes, contended for by counsel for plaintiff in error, would lead to rather absurd consequences, for, if a dealer constructs or alters any door or sash, or even reduces lumber in his stock to the size specially required to meet the specifications of a particular building, he would thereby become a subcontractor, and the employees in his own establishment would be entitled to perfect liens for labor upon the building for which such materials were furnished. The words "construct" and "erect" have reference to the actual combination of materials on the building site to constitute the structure, and not to the manufacture of such materials, which later may be somewhere combined with others to make a building."
"The Court of Ohio held that the defendant lumber company was not entitled to a mechanic's lien.
"A like conclusion is reached in the case of Chambers v. George Vassars Sons & Co. reported in 81 Misc. Reports 562 [143 N.Y.S. 615] and cited by the Court of the State of New York and in that case the following statement was made:
"`I am of the opinion, therefore, that the test as to preference is not the time when labor was expended in producing the materials but whether the person furnishing the materials thereafter performed labor in attaching to or incorporating the materials in the building or the improvement of the real estate. The term "materialman" as defined by the statute and limited by the decisions above cited refers to those who are not engaged in the construction of buildings or improvements upon real estate, but in producing or selling to contractors with the owner, materials that are incorporated in or attached to real estate by the labor of others.'
"On the other side of this question, is the decision of the Supreme Court of Minnesota in the case of Illinois Steel Warehouse Company v. Hennepin Lumber Co. et al. [149 Minn. 157, 182 N.W. 994] which involved the claim of one who had furnished the steelwork for a certain building and who had fabricated the substantial *219 part of it according to plans and specifications for a lien and in which the Supreme Court of Minnesota held that such person was a sub-contractor and not a materialman. In that case the Court made this statement:
"`Whether the Avery Company was a contractor or a materialman within the meaning of the lien law depends on the nature of the contract which it undertook to perform. He contracted to furnish a substantial part of the steel "fabricated", as required by the plans and specifications. This necessarily required the company to do the work of fabrication or cause it to be done and placed the company in the class of contractor as distinguished from the class of materialman under the lien law. That the company, instead of performing the contract itself, performed it through a sub-contractor, did not relieve the company from its obligation to do the fabricating nor change its relation to the building from that of contractor to that of materialman. It follows that Boorman to whom the contract was sublet by the Avery Company actually performed it, was a sub-contractor in the lien law.'
"Likewise in the case of Holt and Bugbee Co. v. City of Melrose et al., decided by the Supreme Court of Massachusetts and reported in [311 Mass. 424] 41 N.E.2d 562 [141 A.L.R. 319], the Court held that:
"`A woodmill operator who prepared and furnished a special interior trim for the City Hall in accordance with plans of general contractor, even though he performed no labor on the building, was not a materialman, but a subcontractor within the statutes securing claims for labor and materials furnished to contractors and subcontractors on public works. The City was properly ordered to pay out of monies held by it on a claim for lumber sold to and so used by the mill operator.'
"A review of the decisions which have involved this question, as has been stated, show a division of opinion in the country as to whether a firm such as the defendant, Southwest Steel Products, is, in this case, entitled to claim a valid lien against the bond or the project involved in this case.
"In Louisiana, no person is entitled to a lien unless specially granted the same by the provisions of the statutes of this State and every statute which grants the privilege of a lien is to be strictly construed, that is, the right granted should never be interpreted to be in any wise broader than the statute which grants it.
"It seems to the Court that it would be an unwise policy of this State to decide under the statute which relates to the granting of liens upon contracts involving public buildings that every person who supplied any materials which went into the construction of such public construction, where it was necessary to alter or build or especially construct said materials to meet certain specifications, would thereby entitle the furnisher of such materials to a lien against the proceeds of the contract involved in such case.
"It is the view of this Court that where one simply contracts to furnish a completed article to be used in a building, and where such person does not have the responsibility and is under no obligation in any manner to join in the installation of such materials in the building itself and to take no part in the actual erection or construction of the building at the site where the same is being constructed, that he and his employees are simply suppliers of materials, that they have no lien for such materials upon the proceeds of the building contract, especially where labor performed in preparation of the materials was done away from the building site and in the place of business of the supplier of such materials.
"In other words, the test ought to be not whether or not there has been time and labor expended in producing the material, *220 for that would be true in the preparation of all materials, but the test should be whether or not the person furnishing the material thereafter performed any labor in attaching to or incorporating the materials into the building or improvements involved in that case. Otherwise, it is evident that there would be no end to those who might do some labor away from the job site in the preparation of materials and because they had thus performed some labor would be able to file a claim or a lien against the project as provided for by law and the owner and the contractor would be subject to harrassment by virtue of the claims of materialmen with whom they had not contracted and about whose claims they had no knowledge or information.
"It seems to this Court clear that as is indicated in Phillips on Mechanic's Lien, as hereinabove referred to, that the question of determining whether the person is a sub-contractor or simply a materialman depends upon the nature of his contract obligation. As stated in that work, there is a palpable distinction between a contract to erect or in being a sub-contractor and a contract to furnish toward the erection or being simply a furnisher of materials. And one who contracts to put up the building or one of its leading divisions, its brickwork, its woodwork or its steelwork is not a mere workman or materialman, but is in fact, under the decision of law, a sub-contractor, whereas one who is simply employed to furnish materials, whether such materials be manufactured or not and whether he be required to transform or fabricate such materials into a condition where it meets the requirements of the contract and the specifications, is nonetheless a materialman and is not employed in any way to erect or put up any part of the building or of its primary divisions and is, therefore, simply a materialman. Under the settled law of this State, a materialman who furnishes material to a materialman, has no right to a lien. Consequently, if Industrial Fabricators, Inc. who were required simply to provide the articles of steel required in the building under consideration, is to be considered a materialman only, and that is the conclusion that this Court reaches, then Southwest Steel Products, even though they may have done work and performed labor in their own shop in Houston, Texas, for the fabrication and the construction of the steel requirements to meet the specifications, are nothing more than the suppliers of materials to a materialman and have no right, under the law, to record, file or claim a legal lien under [LSA-]R.S. 38:2241 against the contractor or his bond in this case."
The judgment of the lower court which meets with our approval, ordered the Clerk of Court of Lincoln Parish to cancel and erase in full the inscription of the affidavit of lien filed by Southwest Steel Products, and dismissed a reconventional demand of the latter, for the balance of its account with Industrial Fabricators, Inc. Accordingly, it is affirmed at appellant's cost.