SAVOY, Judge.
This suit was instituted by R. J. Moore against Coastal Contractors, Inc. and its surety for a money judgment. Coastal Contractors, Inc. was the prime contractor on State Project No. 25-02-12 on U. S. Highway 171 between Many and Zwolle, Louisiana.
Plaintiff alleged he hauled gravel for Coastal to the above project between April 25 and April 27, 1963, and that upon Coastal’s refusal to pay for said hauling, he filed a lien under the provisions of LSA-R.S. 38:2241 et seq. (Public Works Act).
Defendants filed an answer denying any contractual relationship between Coastal and plaintiff for the sale and/or delivery of material to the job site mentioned here-inabove.
LSA-R.S. 38:2241 states as follows:
“Whenever the state or any state board or agency or any political subdivision of the state enters into a contract in excess of one thousand dollars for the construction, alteration or repair of any public works, the official representative of the governing authority shall reduce the contract to writing and have it signed by the parties. He shall require of the contractor a bond, with good, solvent, and sufficient surety in a sum not less than fifty percent of the contract price for the faithful performance of the contract with an additional obligation for the payment by the contractor or subcontractor for all work done, labor performed, or material or supplies furnished for the construction, alteration, or re *468 pair of any public works, or for furnishing materials or supplies for use in machines used in the construction, alteration, or repair of any public works. No modifications, omissions, additions in -or to the terms of the contract, in the plans or specifications or in the manner and mode of payment shall in any manner affect the obligation of the surety. The bond shall be executed by the contractor with surety or sureties approved by the officials representing the state, state board or agency, or political subdivision and shall be recorded with the contract in the office of the recorder of mortgages in the parish where the work is to be done not later than thirty days after the work has begun.”
The jurisprudence seems now well settled that in order for a claimant to hold the prime contractor or the surety liable under LSA-R.S. 38:2241, it is a prerequisite either that there be privity of contract or that the claimant furnish labor or materials to a contractor or subcontractor. See Brouillette v. Atlas Construction Company (La.App., 2 Cir., 1963), 151 So.2d 582; and United States Plywood Corporation v. Caldwell (La.App., 1 Cir., 1966), 183 So.2d 130.
The trial judge made the following finding of fact:
“Plaintiff testified without refutation that the project had become bogged down by reason of the fact that the prime contractor was unable to secure sand from Central Sand and Gravel Company, Inc., to carry on the progress of the work. It is undisputed that the plaintiff, together with his drivers, operated several trucks for the purpose of hauling asphalt or hot mix on this construction project for the prime contractor. It further appears from the evidence that the defendant, Coastal Contractors, Inc., had entered into a contract with Central Sand and Gravel Company, Inc., to furnish the sand delivered ■on the project for the price of $3.75 per yard, plus 2%. The contract entered into between the defendant, Coastal Contractors, Inc., and the Louisiana Department of Highways, was dated March 2, 1962. It will also be noted that Mr. C. E. Waller, who was operating the Central Sand and Gravel Company, Inc., admitted (Tr. 45) that bankruptcy proceedings were filed on February 9, 1962, placing the corporation in bankruptcy; later being replaced. The record does not reveal whether the defendant, Coastal Contractors, Inc., entered into their contract with the trustee for the bankrupt or with the company itself.
“According to the evidence of the plaintiff, the construction project was shut down for lack of sand. He and the drivers of his trucks were sitting in a cafe in Zwolle, Louisiana, when Mr. C. R. (Bugs) Wil-bourn, who was superintendent of the construction project for Coastal Contractors, Inc., approached him with a request to use plaintiff’s trucks to haul sand from near Alexandria, Louisiana, and stockpile it on the project. Plaintiff refusd to haul this sand from the Central Sand and Gravel Company plant operated by Mr. Waller unless there was some provision for him to get his money. Upon this refusal, Mr. Wilbourn assured him that if he would haul the sand, he would see that he would get his money. Plaintiff was corroborated in this by three of the drivers who were with him. I might observe here that in his brief, counsel for defendants tries to infer this is a personal obligation, but this is a play upon the niceties of the English language as any ordinary laborer would understand that he was contracting for his company, and particularly is this true as he was operating as a hauler of asphalt on the job of the prime contrctor, and that the contractor would stand behind the indebt» edness. Based upon this assurance he hauled the sand from near Alexandria, Louisiana, and paid the drivers of his trucks and delivered the sand so that the work could go on and the project be completed.
■ “There is no dispute as to the amount of sand hauled or the price for the hauling; *469 and some of the tickets were signed by an agent of Coastal Contractors, Inc. Although plaintiff alleges that this sand was hauled in three days in April, there seems .to have been some hauled several days later; but I do not feel that this is of any material significance as the defendant corporation received the benefit of the labor performed.
“Plaintiff then sought to collect his money from Coastal Contractors, Inc., but was unable to find the superintendent of the project, Mr. C. R. (Bugs) Wilbourn. He then approached Mr. J. T. Elliott, who with his brother signed certain receipts for the delivery of the sand for the contractor, .and Mr. Elliott informed him to take the matter up with Central Sand and Gravel Company, Inc. He had his wife take these tickets to Central Sand and Gravel • Company, Inc. and was issued a check which is filed herein marked D-l for identification, which purports to be a check issued by C. E. Waller, Trustee, U. S. District Court. This check was dishonored • on two occasions. I am rather surprised ■that a check should be issued and dis'honored under these circumstances and ■nothing done about it.
“Adverting now to the evidence of Mr. •C. E. Waller, who was operating Central Sand and Gravel Company, Inc., his ac-tions, demeanor and evasiveness on the witness stand were so flagrant that it impressed the court that he was seeking to ■ deceive the court and take the pressure off of himself. Over the years I have had occasion to observe witnesses whom I thought were evasive or were testifying in such manner that not much credence could be placed in their testimony, but this is •the first instance in a long number of years that I have felt constrained to reprimand a witness from the bench. His evidence in this case was so patently an attempt to pervert the truth, that it leads me -to the conclusion that I can do nothing else than totally disregard his testimony in -.this case. His actions as trustee in bankruptcy confirm my impression of him as a witness.
“It was stipulated in the record that Mr. C. R. (Bugs) Wilbourn was in Tennessee at the time of trial and his appearance was impossible. However, there is no evidence that it was sought to have him attend and no effort was shown to have been made to take his testimony otherwise to dispute the evidence of Mr. Moore as to the contract for the hauling of the sand. I must therefore accept the version given by Mr. Moore, some of which was corroborated by three witnesses, that the assurance and guarantee of the superintendent of the construction work for the defendant prime contractor was the moving cause for the labor being performed by plaintiff for the use and benefit of the prime contractor. The contractor was the recipient of the benefit of this labor and upon it has collected from the Louisiana Department of Highways the full amount of the contract price. Disregarding the testimony of Mr. Waller, there was not shown to have been any contract or business dealing whatsoever between the plaintiff and Central Sand and Gravel Company, Inc. I find as a question of fact that the hauling was not done as an employee of Central Sand and Gravel Company, Inc., but was done at the request, instance and for the use and benefit of the prime contractor, Coastal Contractors, Inc., acting through its superintendent on the project. Coastal Contractors, Inc., is precluded from receiving the benefits of the contract for hauling the sand and at the same time deny the authority of their superintendent to enter into the contract or to bind them under it.”
After a reading of the entire record, we agree with the finding of fact made by the trial judge; and, accordingly, we are of the opinion that the judgment should be affirmed.
At the oral argument, the Court verified that there is no request by the defendants for a remand to take the testimony of Mr. *470 C. R. Wilbourn. Further, in view of defendants’ failure to produce his testimony at the trial or even to request a continu-uance to include his testimony by deposition or interrogatories (Mr. Wilbourn is temporarily residing in Tennessee), we, like the trial court, are inclined to feel that we would not be justified in granting such a request if made at this late date.
For the reasons assigned the judgment of the district court is affirmed at appellants’ costs.
Affirmed.