**M. B. DUPREE, d/b/a Dupree Gravel Company**

v.

**GAUBERT INDUSTRIES, INC., Brown & Root, Inc., and American General Insurance Company.**

**Civ. A. No. 12702.**

United States District Court
W. D. Louisiana,
Shreveport Division.
Dec. 14, 1967.

Henry W. Bethard III, Bethard & Bethard, Coushatta, La., for plaintiff.

Victor A. Sachse & Fernando J. Freyre, Breazeale, Sachse & Wilson, Baton Rouge, La., for defendants.

## RULING ON VALIDITY OF MATERIALMAN'S LIEN

BEN C. DAWKINS, Jr., Chief Judge.

The sole issue before the Court at this time is the validity of a materialman's lien filed by plaintiff in his own behalf. This is but a single claim in a breach of contract action, and therefore only the facts necessary to disposition of this single issue will be set forth.

Brown and Root, Inc., of Houston, Texas, was the prime contractor on a joint construction project by the Highway Departments of Louisiana and Texas which called for the erection of a bridge in connection with the Toledo Bend Project. Defendant, Gaubert, contracted with Brown and Root to supply ready-mix concrete needed to complete work on the bridge. Plaintiff, Dupree, was to supply sand and gravel to defendant necessary for mixture of the concrete.

Plaintiff contends that he has not been paid for all materials delivered to defendant and that the latter has thus breached "its" contract. Because the prime contract involves the construction of public works, plaintiff alleges that he is entitled to a lien on the proceeds due the contractor under LSA-R.S. 38:2241 et seq.[1] which grants a lien to a materialman or supplier if he supplies a *contractor* or *subcontractor*. Plaintiff is admittedly a supplier and contends that defendant is a subcontractor of Brown and Root.

In counterclaim, defendant contends that the materials supplied by plaintiff were deficient in both quality and quantity, and seeks damages therefor. With respect to the claim before the Court at this time, defendant contends that it was a mere *supplier,* not a subcontractor, to the general contractor, Brown and Root,

---

1. LSA-R.S. 38:2241. "Whenever the state or any state board or agency or any political subdivision of the state enters into a contract in excess of one thousand dollars for the construction, alteration, or repair of any public works, the official representative of the governing authority shall reduce the contract to writing and have it signed by the parties. He shall require of the contractor a bond, with good, solvent, and sufficient surety in a sum not less than fifty percent of the contract price for the faithful performance of the contract with an additional obligation for the payment by the contractor or subcontractor for all work done, labor performed, or material or supplies furnished for the construction, alteration, or repair of any public works, or for furnishing materials or supplies for use in machines used in the construction, alteration, or repair of any public works. * * *"

LSA-R.S. 38:2242 (as amended Acts 1966, No. 537 § 1).

"Any person to whom money is due for doing work, performing labor, or furnishing materials or supplies for the construction, alteration, or repair of any public works, or furnishing materials or supplies for use in machines used in the construction, alteration, or repair of any public works, excluding persons to whom money is due for the lease or rental of movable property, but including any architect and any consulting engineer engaged by the contractor or subcontractor in connection with the building or other public work, may after the maturity of his claim and within forty-five days after the recordation of acceptance of the work by the governing authority or of notice of default of the contractor or subcontractor, file a sworn statement of the amount due him with the governing authority having the work done and record it in the office of the recorder of mortgages for the parish in which the work is done. After the filing and recordation of claims, any payments made by the governing authority without deducting the amount of the claims so served on it shall make the authority liable for the amount of the claims."

and therefore plaintiff is not entitled to a lien.

 The validity of plaintiff's claim must be determined by the legal status of defendant in relation to Brown and Root, because the Louisiana jurisprudence is now well settled that in order for a claimant to hold the prime contractor or surety liable under LSA–R.S. 38:2241 et seq., it is necessary that there either be privity of contract between claimant and the contractor, or that the claimant furnish labor or materials to a contractor or subcontractor.[2] It is conceded no privity of contract exists between claimant and Brown and Root, and thus plaintiff as claimant must have established that defendant was a subcontractor to which plaintiff was a supplier. In the event defendant is found to have been merely a supplier, plaintiff's claim will fail because the statute does not grant a lien in favor of one supplier who supplies another supplier. In this connection we note the well settled rule of Louisiana law that privileges and liens do not exist unless granted by statute and when so granted they are to be construed *stricti juris*.[3]

 The term "subcontractor" has been the subject of many judicial definitions, and there is no general agreement as to the precise meaning of that term.[4] In the leading case of J. Watts Kearny & Sons v. Perry,[5] the Louisiana Supreme Court set forth the standards to be followed in litigation such as is involved here. In *Kearny*, the Court stated that a *subcontractor* was one who contracted with the general contractor to do work embraced in the original contract, and not merely to supply specified materials.[6] This construction has been followed to this day[7] and provides the basis upon which we now decide the instant case.

Plaintiff, primarily, if not solely, bases his claim on evidence at trial showing that concrete "poured" by defendant went into the actual construction of the bridge,[8] therefore, defendant must have been a subcontractor. As authority plaintiff relies on the following test set forth in Heard & Sons v. Southwest Steel Products:

"In other words, the test ought to be not whether there has been time and labor expended in producing the material, for that would be true in the preparation of all materials, but the test should be whether or not the person furnishing the material thereafter performed any labor in attaching to or incorporating the materials into the

2. American Creosote Works, Inc. v. City of Monroe, 175 La. 905, 144 So. 612 (1932); J. Watts Kearny & Sons v. Perry, 174 La. 411, 141 So. 13 (1932); Moore v. Coastal Contractors, Inc., 188 So.2d 467 (La.App.3d Cir. 1966); United States Plywood Corporation v. Caldwell, 183 So.2d 130 (La.App.1st Cir. 1966); Brouillette v. Atlas Construction Company, 151 So.2d 582 (La.App.2d Cir. 1963); Jesse F. Heard & Sons v. Southwest Steel Products, 124 So.2d 211 (La.App.2d Cir. 1960).

3. See In re Employers' Liability Assurance Corp., Ltd., 180 La. 406, 156 So. 447 (1934); State ex rel. Metropolitan Land Co. v. Recorder of Mortgages, 166 La. 271, 117 So. 145 (1928); see also Lumber Products, Inc. v. Crochet, 244 La. 1060, 156 So.2d 438 (1963).

4. See 40 Words and Phrases verbo "Subcontractor."

5. 174 La. 411, 141 So. 13 (1932).

6. 141 So. at p. 14: "Weaver Sand Company, Inc., was not a subcontractor, as it had not contracted with Perry, the contractor, to do any work embraced in his original contract with the Louisiana highway commission. Plaintiff, therefore, is not a creditor of the contractor, * * * nor of any subcontractor, and is not entitled to the protection of [the statute]."

7. See cases cited in note 2, supra.

8. See Transcript pp. 94–95 in which witness Gaubert testified that sometimes his (Gaubert's) drivers dumped the cement directly into the forms. However, it will be evident in note 10 below that this was done pursuant to order of the general contractor and not as a part of any agreement to perform labor in completing the construction of the bridge.

building or improvements involved in that case." [9]

In fine, plaintiff's position is that defendant's truck drivers "performed labor in attaching to or incorporating the materials [concrete] into the * * * improvement [bridge] involved in [the] case." With this position, we do not agree.

 From the record it is crystal clear that the only obligation and duty undertaken by defendant was the *preparation* and *delivery* of the concrete.[10] Defendant did not erect the forms into which the concrete was poured. Defendant did not specify when, where or how the concrete was to be poured, nor did it dictate the quality of mixture of the concrete, except as required by the general contract. All of these activities and specifications were carried out under strict supervision of Brown and Root. Defendant's only obligation was to supply concrete when and where Brown and Root specified. This analysis is also clearly set forth and substantiated in the written contract between defendant and Brown and Root.[11] No citation of authority is needed to support the well known fact that ready-mix concrete is often, if not always, *supplied* only when the contractor is ready for its use. The mere fact of delivery into a previously prepared form does not convert the concrete supplier into a subcontractor. He merely delivers as ordered in accordance with his contract, and this procedure was followed in the instant case.

Because of these findings, we hold that defendant, Gaubert Industries, was a *supplier*, not a subcontractor, to the general contractor, Brown and Root, and therefore plaintiff, also a supplier,

is not entitled to a lien under LSA–R.S. 38:2241 et seq. It is further ordered and decreed that any and all liens filed by plaintiff against defendant pursuant to LSA–R.S. 38:2241, et seq., be cancelled.

---

9. Heard & Sons v. Southwest Steel Products, 124 So.2d 211, at pages 219–220 (La.App.2d Cir. 1960), where the Court of Appeal is quoting from the District Court's decision.

10. Transcript pp. 94–96, particularly p. 96:
 THE COURT: Did your contract include the responsibility of placing the concrete in the forms?

THE WITNESS: No, sir, it did not. It required to deliver the concrete to the contractor wherever he may ask us to deliver it to him.

11. See Photocopy of contract executed between Brown and Root, Inc., and Gaubert Industries, Inc. which is attached to defendant's brief concerning the validity of the lien.