HEARD, Judge.
Long Leaf Lumber, Inc., as owner, contracted with Hamilton D. Harper, dba Harper & Company, to complete a partially constructed house on Long Leafs property. This contract was not recorded. The work on the house was completed, and Oscar H. Bailey, allegedly a subcontractor of Harper’s, timely filed a lien against Long Leaf’s house and lot. After a correction, the lien filed by Bailey was in the amount of $4,214.14. Bailey, in consideration of an indebtedness to Gifford Hill & Company, Inc., assigned the account and lien to Gifford Hill. Gifford Hill brought this action against Harper and Long Leaf to collect the $4,214.14.
After trial, judgment was rendered in favor of Gifford Hill against Long Leaf for $3,459.16. Harper was not cast in judgment apparently because he had been declared a bankrupt. The lien was not recognized in the judgment. Long Leaf perfected a devolutive appeal from this judgment and Gifford Hill answered the appeal praying for an increase to $4,214.14.
Long Leaf specifies as error the following: (1) the trial court committed error in finding that Oscar H. Bailey was a subcontractor entitled to a lien and personal rights against the owner of the property under Louisiana Revised Statutes 9:4812, and (2) the trial court committed error in not ruling that Long Leaf Lumber, Inc. would be entitled to a credit for any amounts which Oscar H. Bailey might receive as a result of his filing a Proof of Claim in the bankruptcy of Hamilton D. Harper, Jr.
No complaint is made of the fact that Harper was not cast in judgment nor that ■the lien was not recognized in the judgment and these are not issues on appeal. Long Leaf argues that the relationship between Harper and Bailey was not that of contractor-subcontractor. Harper did not testify in this suit. Bailey testified that he and Harper discussed the cost of the improvements to Long Leaf’s house. They estimated the cost of the improvements based on about $1.25 per square foot for labor and $0.55 per square foot for concrete, or a total estimated cost of $6,099. According to their agreement, if the actual cost was greater than the estimate Harper would pay the overage. If it was less than the estimate Harper and Bailey would split the difference. This was Harper and Bailey’s normal agreement for the construction of story-and-a-half houses.
Bailey built many houses for Harper under the aforementioned agreement. Obviously, if Bailey held the actual cost down below the estimated cost, both he and Harper would benefit. If Bailey could not hold his cost to his estimated figure, Bailey broke even and Harper took the loss. It is true that this is not the standard contractor-subcontractor arrangement. However, we do not feel that this unusual arrangement as to the price to be paid Bailey prevents his being a sub-contractor within the meaning of LSA-R.S. 9:4801 et seq.
Long Leaf points out that Bailey did not collect moneys due him after completing work on each house. The evidence shows that Harper paid various sums of money to Bailey as requested by Bailey on a more or less weekly basis. The two did not meet after completion and settle what was due, but they did attempt to sort it out on a yearly basis. Although Bailey’s financial relationship with Harper was lax, we cannot say it prevents him from being accorded the status of sub-contractor.
Bailey entered into a contract with Harper to complete work on Long Leaf’s house. Bailey paid his own laborers and subcontractors and retained control over his workers and the means of doing the work. Harper’s interest was limited to the *845 finished product of Bailey’s work. The following language is appropriate here:
“Important considerations in determining whether a claimant is a subcontractor are: (a) whether his subcontract was for the performance of part or all of another contract. Webster New International Dictionary, Second Edition (1944); (b) whether it was an identifiable unit portion of the larger work; (c) whether the subcontractor was responsible for undertaking and completing the specified unit of work; (d) whether he directly deployed, supervised and controlled his own men and equipment in their performance of his unit of work, through his own foreman or other supervisory employees.”
Continental Casualty Company v. Associated Pipe & Supply Co., 310 F.Supp. 1207, 1217 (E.D.La.1969); language approved in 447 F.2d 1041 (5th Cir. 1971). See also Jesse F. Heard & Sons v. Southwest Steel Products, 124 So.2d 211 (La.App., 2d Cir. 1960); writ refused, January 9, 1961; American Creosote Works, Inc. v. City of Monroe, 175 La. 905, 144 So. 612 (1932). Without analyzing each of the above considerations in this opinion, we find the evidence to be that Bailey substantially meets all of the above considerations. It is noteworthy that the court in the cited and quoted cases above did not believe it was an important consideration how the subcontractor collected his moneys or how the subcontract allocated costs. For the reasons so stated, we hold that Bailey was a subcontractor of Harper’s on this Long Leaf house.
Long Leaf asserts that it is entitled to a credit for any amounts Bailey receives from Harper’s bankruptcy proceedings which are attributable to Bailey’s work on Long Leaf’s house. This is a correct statement of the law. Long Leaf Lumber, Inc. v. Svolos, 258 So.2d 121 (La.App., 2d Cir. 1972). Apparently, no payments have been made in Harper’s bankruptcy proceedings. Gifford Hill suggests in brief that we reserve Long Leaf’s right to claim a credit for any amounts paid to Bailey attributable to this house. We shall do so.
The trial judge disallowed Gifford Hill’s claim for 17% overhead on the labor and a 10% profit. There is no legal basis for the subcontractor in this case collecting an arbitrary 10% profit figure from the owner, particularly since the subcontract did not provide for such. It was correct for the trial judge to disallow this item. On the other hand, we believe the trial judge should have allowed the 17% overhead on the labor. The 17% figure was part of the contract agreed to between Harper and Bailey. It was to cover Bailey’s expenses for making out the payroll and the like. As this is a real expense of the labor subcontractor, we hold his as-signee is entitled to recover it from the homeowner who failed to record a building contract. The total labor proved by Bailey is in the amount of $2,394.27. 17% of this is $407.03. Other costs amounted to $1,064.89.
For the reasons stated, the judgment of the district court is amended and recast as follows: It is ordered, adjudged, and decreed that there be judgment herein in favor of Gifford Hill & Company, Inc. and against Long Leaf Lumber, Inc. in the amount of Three Thousand Eight Hundred Sixty-Six and 19/100 ($3,866.19) Dollars, with five percent (5%) per annum interest thereon from March 20, 1970 until paid and for all costs of this suit. Long Leaf Lumber, Inc. is hereby reserved the right to claim a credit for any amounts paid to Oscar H. Bailey in the bankruptcy proceedings styled “In the Matter of House of Carpets, Inc. et al. v. Hamilton D. Harper, Jr., No. 22,806 in Bankruptcy”, United States District Court, Western District of Louisiana, Shreveport Division, attributable to Oscar H. Bailey’s work on the following property: “Lot 358, Spring Lake Estates, Unit No. 4, a subdivision of the City of Shreveport, Caddo Parish, Louisiana, as per plat thereof recorded in Plat Book 100, pages 205, 207, 209, and 211 of *846 the Conveyance Records of Caddo Parish, Louisiana, together with all buildings and improvements located thereon and all rights thereto belonging.”
Costs of this appeal are to be borne by Long Leaf Lumber, Inc.