294 So.2d 255 (1974)
T. M. THURMAN, d/b/a Thurman Electric Co.
v.
STAR ELECTRIC SUPPLY, INC., Defendant-Appellant-Appellee, and
Stagecraft Industries, Inc., Defendant-Appellant-Appellee, and
Edwin F. Guth Co., Defendant-Appellee.
No. 9361.
Court of Appeal of Louisiana, First Circuit.
April 22, 1974.
Rehearing Denied May 28, 1974.
Writ Granted August 28, 1974.
*256 Tom H. Matheny, Hammond, for plaintiff-appellant-appellee Thurman.
Walton J. Barnes, Baton Rouge, for defendant-appellant-appellee Star Elec.
John D. Kopfler, Hammond, for defendant-appellant-appellee Stagecraft Industries, Inc.
Duncan S. Kemp, III, Hammond, for appellee.
Before LOTTINGER, BLANCHE and de la HOUSSAYE, JJ.
LOTTINGER Judge.
This is a concursus proceeding instigated by T. M. Thurman d/b/a Thurman Electric Company. Other parties are Star Electric Supply, Inc., Stagecraft Industries, Inc. and Edwin F. Guth Company.
The facts disclose that Charles Carter & Company, Inc. entered into a contract with the Louisiana State Board of Education for the construction of a multi-purpose classroom building on the campus of Southeastern Louisiana College at Hammond, Louisiana. As part of its performance, Carter entered into a sub-contract with T. M. Thurman, d/b/a Thurman Electric Company, by which sub-contract Thurman obligated himself to complete the electrical portion of the contract. Thurman ordered certain electrical materials needed for the construction of the building from Star Electric Supply, Inc. Star accepted this order and purchased the items required from various manufacturers including Stagecraft Industries, Inc. and the Edwin F. Guth Company.
Subsequently, Star filed a lien in the sum of $46,277.75 asserting that this amount remained due and unpaid on the materials which it furnished Thurman. Stagecraft filed a lien in the sum of $44,894.00 asserting that this amount remained due and unpaid on materials sold by it to Star, and Guth filed a lien in the sum of $12,053.05 asserting that this amount remained due and unpaid on its order.
Thurman then filed a petition for concursus citing Star, Stagecraft and Guth to appear therein and assert whatever claims they may have and deposited into the registry of the Court the sum of $44,702.28 which was the amount Thurman acknowledged as yet unpaid on its original purchase order to Star. Stagecraft filed an answer to the concursus proceeding in a third party demand. The essence of the answer to the concursus was that Stagecraft sold equipment and fixtures to Star which were used in the construction and for which the balance of $44,894.00 was still due. The essence of the third party demand was that it should have judgment against Carter and his surety, Thurman and his surety, Star, and the State, for the amount of its claim because it supplied materials used in the construction. Star answered the concursus proceeding, reconvening against Thurman and third partied Thurman's surety, as well as Carter and his surety, as well as the State. The essence of the answer to the concursus was that it was entitled to the proceeds in the registry of the Court. The reconvention was to the effect that it was *257 not paid in full for materials sold to Thurman and should have judgment against Thurman for the unpaid balance. The third party demand was to the effect that Star was entitled to the proceeds in payment for the balance due on its claim by virtue of its lien.
Guth filed an answer and third party demand. The answer, in essence, prayed for the satisfaction of its claim from the proceeds in the registry of the Court because it sold materials to Star used in the construction and the third party demand was to the effect that Carter, his surety, Thurman, his surety, Star and the State were liable for the amount of the claim because the materials were used in the construction of the building.
Thurman, his surety, Carter, his surety and the State answered the third party demand of Guth denying same and also Thurman and his surety, Carter and his surety and the State answered the third party demands of Star denying same. Subsequently, Thurman and his surety, Carter and his surety, and the State answered the third party demand of Stagecraft denying same.
Following trial, judgment was rendered in favor of Stagecraft awarding it the sum of $44,702.28, deposited in the registry of the Court. All costs of the Court were to be deducted from the deposit, and Stagecraft was given judgment against Star for the amount of the costs. The claim of Thurman for attorney fees in the sum of $4,470.02 to be paid from the funds on deposit in the registry of the Court was granted. From this judgment appeals were taken by Thurman, Stagecraft and Star. Guth did not appeal nor did they answer the appeal, and, therefore, this Court will not even consider its claim.
We feel that the Lower Court erred both in awarding a judgment in favor of Stagecraft, as well as awarding Thurman attorney fees.
With regard to the judgment in favor of Stagecraft, we feel that the decision of our learned brethren from the Second Circuit in the case entitled Heard & Sons v. Southwest Steel Products, 124 So.2d 211, is controlling. In that case the petitioner entered into a building contract with the Louisiana State Board of Education. The contractor was to furnish all labor and materials necessary for the construction of a student union building at Grambling College. The contractor entered into a subcontract with Industrial Fabricators for the furnishing of certain structural steel and miscellaneous items which required special fabrication. Industrial Fabricators in turn contracted Southwest Steel Products for the fabrication of the steel. Subsequently, Industrial Fabricators were adjudged bankrupt and Southwest Steel Products filed its affidavit of lien.
In that case the Court held that one who supplies materials to either a contractor or sub-contractor in connection with construction of a public building is entitled to a lien under the Public Works Act, but one who furnishes material to materialmen has no right to a lien. In that regard the Court there said as follows:
"It is the view of this Court that where one simply contracts to furnish a completed article to be used in a building, and where such person does not have the responsibility and is under no obligation in any manner to join in the installation of such materials in the building itself and to take no part in the actual erection or construction of the building at the site where the same is being constructed, that he and his employees are simply suppliers of materials, that they have no lien for such materials upon the proceeds of the building contract, especially where labor performed in preparation of the materials was done away from the building site and in the place of business of the supplier of such materials."

"In other words, the test ought to be not whether or not there has been time and labor expended in producing the material, for that would be true in the preparation *258 of all materials, but the test should be whether or not the person furnishing the material thereafter performed any labor in attaching to or incorporating the materials into the building or improvements involved in that case. Otherwise, it is evident that there would be no end to those who might do some labor away from the job site in the preparation of materials and because they had thus performed some labor would be able to file a claim or a lien against the project as provided for by law and the owner and the contractor would be subject to harassment by virtue of the claims of materialmen with whom they had not contracted and about whose claims they had no knowledge or information."
A reading of the evidence here clearly shows that the Stagecraft Industries, Inc. took no part, whatsoever, in the installation of its material in the school. Star Electric was a factory representative and ordered the materials from Stagecraft. The bulk of the materials were delivered by Stagecraft direct to the job site which is not uncommon in this particular industry. There was no contractual relationship whatsoever between Stagecraft and Thurman. Thurman installed and checked out the equipment as per plans and specifications. Most of the work performed were from brochures and drawings and although Stagecraft did send a representative to the job site to check the installation and to determine whether the equipment was working satisfactorily, Mr. Thurman himself testified that supervision to determine whether or not the equipment was correctly installed and working satisfactorily, was necessary because of the particular equipment used being very technical and he requested that he come to the job site for such purposes because of the warranty on the equipment.
Mr. James F. Blackwood, the president of Star Electric Supply Company, testified that Star was not required to do any supervisory work of any nature. He testified that the type of system installed was of such a very specialized nature, that even another manufacturer of the same type could not have checked it out. There was certain circuit wiring in the system that was patented by Stagecraft and no one else to his knowledge could have checked the system out to see if it was functioning properly.
Mr. David Young, manager of the lighting division of the Stagecraft Industries testified that because of the technical nature of the equipment, most contractors would have problems on installation unless the manufacturer determined each basic component was properly placed and that proper wiring harnesses were supplied and connected to the job. He testified that he made one trip to the job site and stayed two days.
The sum and substance of the matter is that Mr. Thurman installed the equipment, the Stagecraft Company only sent their representatives down to determine whether the equipment was properly installed and functioning in a satisfactory manner. Under the facts of the case we hold that Stagecraft was a supplier to a supplier as set forth in the Heard case and, therefore, not entitled to a lien for either labor or materials.
With regard to the question of attorney fees, Article 4659 of the Code of Civil Procedure provides that when money has been deposited in the registry of the Court, the Court may award the successful claimant judgment for the costs of the proceeding which is to be deducted from the money on deposit. In the official revision comments under said article it is stated that the courts have refused to award attorney fees and apply the rule that these are not recoverable unless allowed by contract or by statute.
The attorney for petitioner, however, claims that attorney fees are to be awarded under the provisions of R.S. 9:4810. Said statute, however, deals with private works, rather than public works and while it does *259 allow the payment of attorney fees from the money on deposit, it specifically charges that "... this fee shall not be paid in preference to the claims of subcontractors, journeymen, cartmen, truckmen, laborers or materialmen."
As the Star Electric was a materialman herein and as its claim is in a larger amount than that on deposit in the registry of the Court, we feel that the only thing which can legitimately be plead in preference to their claim would be the actual amount of court costs. This is indeed unfortunate, as Thurman has expended apparently a sizable sum in his costs and attorney fees in trying to resolve the present case, however, we must follow the law.
For the reasons hereinabove assigned, it is ordered that judgment of the Lower Court will be reversed and there will be judgment herein in favor of Star Electric Supply, Inc. awarding them the sum of money on deposit in the registry of the Court, less court costs.
Reversed.