Judge Daniel L. Dysart
|! This matter arises from a contractual dispute between ETI, Inc. (“ETI”) and Buck Steel, Inc. (“Buck Steel”). For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
In November, 2011, the State of Louisiana entered into a contract with ETI for the latter to serve as the general contractor for the construction of an addition to the central plant at the University of New Orleans North Campus (“the Project”). ETI then subcontracted with Buck Steel for certain tasks related to the construction of a metal building system required for the Project. Included among these tasks was the preparation of engineered stamped drawings.
After issues arose over the drawings prepared by Buck Steel, ETI terminated its contract with Buck Steel and filed a Petition against it on November 23, 2012, alleging the following facts. According to ETI, it provided Buck Steel with a copy of the plans, specifications and addenda for the Project on February 1, 2012. Buck Steel then submitted a quote for the metal building system on February 2, 2012, which ETI accepted on February 3, 2012. Thereafter, ETI instructed Buck Steel to 12prepare the “submittals necessary to obtain the approval of ... [the] Metal Budding System by the Engineer and Architect of record for the project.” ETI issued a payment to Buck Steel in the amount of $17,500.00 on February 22, 2012.
On March 9, 2012, Buck Steel issued a submittal to the Project’s architect, who rejected it for the reason that “the submit-tal and shop drawings failed to comply with the plans and specifications for the Project.” The architect provided “extensive notes” for Buck Steel to use in order to revise its submittal.
On June 4, 2012, ETI issued another payment to Buck Steel in the amount of $28,129.00 and, on June 18, 2012, Buck Steel issued its second submittal to ’ the Project’s architect. This submittal was again rejected “for the same reason that the first submittal was rejected.”
In this lawsuit, ETI alleged that, because of Buck Steel’s failure to properly and timely prepare the necessary submit-tals, there was a delay in the Project and ETI incurred delay damages. ETI further alleged that it had to obtain the metal building system from another vendor. ETI sought the return of the funds paid to Buck Steel, in addition to damages, including delay damages, costs and other equitable relief.
By way of a First Amended and Supplemental Petition, filed on May 2, 2014, ETI amended its original petition so as to specify the damages it sought, as follows:
- Return of the two payments ($17,500.00 and $28,129.00)
Is- Increased contract amount of $21,155.32 which ETI incurred in “hir[ing] an alternate contractor to prepare the necessary submittals and provide the metal building that Buck Steel failed to provide”
- Unusable Boes Iron Works mezzanine steel valued at $25,039.00
- Delay damages of $70,800.00
- ETI’s additional overhead of $141,012.00
- Payments to “Bonding Company Administrator” of $27,000.00
*442 - Payments to “the paymaster for the bonding company” of $6,000.00
- Olympic Group price increase of $7,060.00
On September 12, 2014, Buck Steel filed a Reconventional Demand against ETI in which it alleged that ETI breached the contract with it when it “unilaterally rescinded. .. and canceled the Sales Contract on or before August 16, 2012.” Buck Steel sought liquidated damages pursuant to the sales contract in the amount of 33% “of the entire contract,” collection costs, attorney’s fees and other costs and fees.
The matter proceeded to trial from May 4-6, 2015, and by judgment dated November 3, 2015, the trial court awarded ETI damages of $46,194.32 (on the basis that ETI “carried its burden of proving a breach of contract).[1] The judgment also found that Buck Steel, “a vendor under Louisiana law, is allowed to bring its breach of contract claim, BUT that the Court finds no breach of the Sales Contract in question.” The Court also concluded that Buck Steel “is entitled to retain the $45,629 in deposits paid by ETI, Inc.” The judgment then stated that ETI was .[^entitled to the difference of the two amounts or a total of $565.32 in damages.”
On November 12, 2015, ETI filed a Motion for New Trial on the basis that the trial court’s November 3, 2015 judgment was inconsistent with the Reasons for Judgment and because the judgment contained a mathematical error with respect to awarding ETI the difference between the sums awarded to ETI and Buck Steel.[2] After a hearing on the motion held on January 8, 2016, the trial court issued a judgment on March 7, 2016. The judgment denied ETI’s motion for new trial but corrected its prior judgment so as to read as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that ETI, Inc. carried its burden of proving a breach of contract action on the part of Buck Steel AND is entitled to damages in the amount of $46,194.32. Under the evidence presented, Buck Steel is entitled to retain the $45,629 in deposits paid by ETI.[3]
ETI timely appealed the judgment.
DISCUSSION
At the outset, ETI urges this Court to adopt a de novo standard of review, arguing that, while a “trial judge has broad discretion in granting or denying a motion for new trial,” “when one or more legal errors interdict the court’s fact finding process, the manifest error standard becomes inapplicable.” While we agree with ETI that issues concerning the interpretation of contracts are questions of law subject to a de novo standard of review,[4] factual determinations by the trial | Bcourt *443 are subject to a manifest error standard of review. See, Harold A. Asher, CPA, LLC v. Haik, 12-0771, p. 4 (La.App. 4 Cir. 4/10/13), 116 So.3d 720, 723.
In this appeal, ETI does not challenge the trial court’s failure to award it certain items of damages it sought by way of its original and supplemental petitions (e.g., delay damages, additional overhead, payments related to the bond or the price increase of Olympic Group). Rather, ETI raises three issues in this appeal: (1) the trial court’s finding that Buck Steel is not a contractor under Louisiana law, (2) the trial court’s finding that Buck Steel is allowed to retain the payments made to it by ETI; and (3) the trial court’s failure to award costs to ETI. We address each assignment of error in turn.

Whether the tidal court erred in finding that Buck Steel is not a contractor under Louisiana law

In its first assignment of error, ETI maintains that the trial court erred in failing to find that, under the circumstances of this ease, Buck Steel was a contractor rather than a vendor because it agreed to supply the material to construct the metal budding and to erect the building in question. ETI then argues that, because Buck Steel was a contractor as contemplated by La. R.S. 37:2150.1(4)(a),[5] and was not licensed as a contractor in Louisiana, “Buck Steel’s Contract for over $50,000, which included erecting the steel building, was absolutely null.” In | (¡support of its arguments, ETI relies on the case of Alonzo v. Chifici, 526 So.2d 237, 243 (La. App. 5 Cir. 1988).
The trial court rejected ETI’s contention that Buck Steel is a contractor under Louisiana law. In its Reasons for Judgment, the trial court noted that the contract at issue “provided that Buck [Steel] would provide for the erection of the steel at an additional cost of $30,000,00.” However, the trial court ultimately concluded that:
... ETI contracted with Buck [Steel] to provide a set of drawings that matched the requirements requested by the State only and that though this agreement mentioned the erection of the steel structure, the amount set forth in the contract does not include that part of the agreement. It is therefore of no moment. ETI understood, when they signed the agreement, that Buck had no responsibility for the erection of the structure.
ETI contends that both a “pre-contract letter of intent” and the actual contract signed by the parties contemplated that Buck Steel would, indeed, provide the materials and erect the metal building. We disagree. While the letter of intent and the contract do contain separate pricings for the building and for the erection of the building, it is clear that the only pricing to which the parties agreed pertained to the design of the building and Buck Steel’s furnishing certain components for the building. As such, we agree with the trial court that Buck Steel was not a contractor.
*444 The record reflects that on February 3, 2012, ETI sent Buck Steel a letter of intent. The letter confirmed ETI’s “intent. .. to enter into [a] contract with BUCK STEEL, INC to perform specific services” as outlined in an attached quote from Buck Steel dated February 2, 2012. The attached quote included “building pricing” of $59,640.00 and “erecting pricing” at a cost of $30,000.00.
^According to the trial testimony of Ser-eno Mason Merrill, the estimator with Buck Steel who was involved in confecting the contract with ETI, the February 2, 2012 quote was an initial quote based on the information provided to Buck Steel at that time. Over the ensuing couple of weeks, several different quotes were provided to ETI based upon new or updated information. Ultimately, the parties entered into a sales contract on February 22, 2012 (hereafter sometimes referred to as “the Contract”), which included the costs for “building pricing” (including engineered stamped drawings) of $87,632.00 and erecting pricing of $30,000.00.[6]
As the Contract indicates, the actual costs to which the parties agreed were limited to the building price, as is evident from the final breakdown of the costs. The ultimate price for the services to be rendered by Buck Steel under the Contract consisted solely of the building price of $87,632.00. The pricing required an engineering deposit of $17,500.00 and a fabrication deposit of $8,800.00. The “COD” listed on the Contract was $61,332.00 (which consists of the “building price” less the two deposits).[7] The ultimate breakdown of the agreed costs did not include the $30,000.00 quoted price for the erection of the building.
It is therefore clear from the Contract that the parties contemplated that Buck Steel would provide only those services included with the building pricing. That this was the agreement is supported by the trial testimony of Brian Tenette, ETI’s former project manager who was involved in the Project. When asked what ETI “expected] Buck Steel to do in connection with the agreement,” Mr. Tenette Igtestifled that ETI expected it to “provide a set of shop drawings consistent with the project documents and specification[s].” The drawings would then be submitted to the architect for approval and then “forward[ed] back to ETI [which] would in turn send the same to Buck Steel.” According to Mr. Tenette, once the documents were approved, ETI expected Buck Steel to “[p]roduce the building.” Mr. Tenette did not state that Buck Steel was expected to erect the building. Likewise, Mr. Tenette admitted that there was a separate “erecting contract” that ETI signed but which was never executed by Buck Steel.[8]
The terms of the Contract, too, confirm that Buck Steel was not retained to construct the metal building. The terms and conditions of the Contract specifically state that “Seller [Buck Steel] and Buyer [ETI] hereby agree that Seller shall have no *445 responsibility whatsoever for the erection of the structure or structures which are the subject of this Contract and that Seller shall be under no liability whatsoever to Buyer for any loss of damage sustained by Buyer as a result of or in connection with the erection of the said structure or structures.”
In its reasons for judgment, the trial court found that Buck Steel agreed to “provide drawings for [the] steel building to be erected on UNO’s campus and, once those drawings were approved, to ultimately provide the materials needed for erection of the building.” Accordingly, and in reliance on the case of Jesse F. Heard & Sons v. Southwest Steel Products, 124 So.2d 211 (La. App. 2 Cir.1960), the trial court concluded that “if a party merely prepares the materials so they can be built at a later date, the party is a vendor, not a contractor.” The Jesse F. Heard & Sons court noted that “where one simply contracts to furnish a completed article 19to be used in a building, and where such person does not have the responsibility and is under no obligation in any manner to join in the installation of such materials in the building itself and to take no part in the actual erection or construction of the building at the site where the same is being constructed, that he and his employees are simply suppliers of materials....” Id., 124 So.2d at 219.
Here, Buck Steel did not serve merely as a supplier of materials, insofar as it was also retained to prepare engineered drawings. However, we agree with the trial court that Buck Steel was clearly not acting as a contractor under these circumstances and we, thus, find no error in the trial court’s ruling.
We are also mindful of our well-settled jurisprudence indicating that, as a matter of contract interpretation, when the “words of a contract are clear, unambiguous, and lead to no absurd consequences, we may not look beyond the contract language to determine the true intent of the parties.” Rousset v. Smith, 14-1409, p. 6 (La.App. 4 Cir. 9/23/15), 176 So.3d 632, 637, writ denied sub nom. Schafer v. Tubbs, 15-1939 (La. 11/30/15), 184 So.3d 35. Here, the terms of the contract are unambiguous and clearly indicate that Buck Steel would not provide services related to the erection of the building. We thus find no merit to ETI’s argument that Buck Steel was operating as an unlicensed contractor such that the Contract is void.
We are not persuaded that the Alonzo case dictates a finding that Buck Steel was operating as a contractor, as ETI contends. The court in Alonzo concluded that a contract was, indeed, a construction contract, and that because the contractor was unlicensed, the contract was void (the court did, however, find that the contractor was entitled to be paid for the work performed, without overhead and profit; the court noted that “[although the contract is in violation of prohibitory law and is 11 nillegal, it would be unjust to allow [the owner] to escape liability for payment of the actual cost of materials, services and labor while reaping the benefits of the renovations.” Id., 526 So.2d at 243). Notably, the trial court made the following observations with respect to whether a contract is classified as a sales contract or a construction contract:
... [T]the agreement [at issue] fits the definition of a contract to build (a contract to do) as defined by La.C.C. Articles 2756 and 2757:
“To build by a plot, or to work by the job, is to undertake a building or a work for a certain stipulated price.”
“A person who undertakes to make a work, may agree, either to furnish his work and industry alone, or to furnish *446 also the materials necessary for such a work.”
Although the Civil Code clearly contemplates a distinction between sales and construction contracts, it defines the contract of sale in very general terms. The judiciary has developed several tests for determining whether a given contract is a contract of sale or a construction contract. In Acadiana Health Club, Inc. v. Hebert, 469 So.2d 1186, 1189 (La. App. 3rd Cir.1985) the court notes:
“There are three major factors in determining whether a contract is a contract of sale or a contract to build or to work by the job. First, in a contract to build, the “purchaser” has some control over the specifications of the object. Second, the negotiations in a contract to build take place before the object is constructed. Lastly, and most importantly, a building contract contemplates not only that the builder will furnish the materials, but that he will also furnish his skill and labor in order to build the desired object. Duhon v. Three Friends Homebuilders Corporation, 396 So.2d 559 (La. App. 3 Cir.1981); Airco Refrigeration Service, Inc. v. Fink, 242 La. 73, 134 So.2d 880 (1961).”
Id.,Id., 526 So.2d at 241. The last requirement for a construction contract, that the builder will furnish skills and labor to actually build the product, is clearly missing from the Contract at issue herein, as we have already found. The Alonzo case, Intherefore, supports our conclusion, and that of the trial court, that the Contract was not a construction contract.

Award of $45,629.00 to Buck Steel

In its next assignment of error, ETI maintains that the trial court erred in allowing Buck Steel to retain the sums paid by it to Buck Steel, which totaled $45,629.00. ETI again relies on its position that, under the Contract with Buck Steel, Buck Steel was operating as a contractor under Louisiana law, and that, because it was not licensed in the State, the Contract is null and void. We have already determined that this argument is without merit.
In the alternative, ETI argues that, because the trial court found that Buck Steel breached the Contract and because Buck Steel is a vendor, ETI is entitled to the dissolution of the sale of the steel building, a return of the purchase price and damages. In support of this position, ETI cites La. C.C. art. 2485 and the case of Rabb & Rainey Iron Works v. Le Blanc, 229 La. 625, 86 So.2d 513 (1956). We find neither to be decisive of the issue in this case, as both Article 2485 and Rabb & Rainey Iron Woks deal simply with contracts to buy and sell.
We first note that the terms and conditions section of the Contract contain a provision which states that, “[sjhould the Buyer [ETI] breach or unilaterally rescind or cancel this contract, the deposit herein shall be forfeited to the Seller [Buck Steel] as liquidated damages for breach of contract and as special damages for losses incurred by the Seller.” There is no question that ETI unilaterally canceled the Contract and, accordingly, under the clear and unambiguous terms of the Contract, ETI forfeited the sums it paid to Buck Steel as of the time that the Contract was canceled. On this basis, alone, the trial court’s finding that Buck Steel was entitled “to retain the $45,629 in deposits paid by ETI, Inc.” is correct.
hiWe now turn to ETI’s argument in the alternative, that the trial court erred in failing to order a dissolution of the sale and a return of the amounts paid by it.
Louisiana Civil Code article 2485 provides, in pertinent part, that “[w]hen the seller fails to deliver or to make timely *447 delivery of the thing sold, the buyer may demand specific performance of the obligation of the seller to deliver, or may seek dissolution of the sale,” and damages. Rdbb & Rainey Iron Works applied the provisions of this Article (as it was worded at the time) to a contract for the sale of steel. The Supreme Court, after determining that a valid contract existed between the parties, found that the seller failed to deliver the steel to the purchaser, the consequence of which was that “the buyer [was] entitled to an action for the return of the purchase price” under then-Artiele 2485. Id. at 515.
In this matter, the Contract between ETI and Buck Steel was not merely a contract to purchase the steel building or materials from which the steel building would be built. To the contrary, the Contract included engineered stamped drawings, as was confirmed by Mr. Tenette. In its reasons for judgment, the trial court, too, found that the Contract provided for Buck Steel to “provide drawings for a steel building to be erected on UNO’s campus and, once these drawings were approved, to ultimately provide the materials needed for erection of the building.”
There was much discussion at trial regarding when certain documents (e.g., the project manual, certain addendums) were provided to Buck Steel by ETI. Buck Steel maintained that ETI did not timely provide the documents or certain necessary information which delayed its ability to produce the drawings. Buck Steel did, however, twice provide drawings to ETI, both of which were rejected by the architects and engineers for the Project. As the trial court found, the record supports that Buck Steel failed to revise and correct the second set of drawings h¡¡with the measurements and information provided to it in response to its first set of drawings.
Buck Steel was ultimately terminated from the Project but only after ETI had retained another company to provide the drawings and the steel building.[9] The trial court ultimately concluded that Buck Steel breached the Contract because it failed to provide drawings which were acceptable. The trial court did not find any breach on the part of ETI, although in failing to award delay damages to ETI, the trial concluded that ETI did not prove that Buck Steel was “the sole cause of any of the delay damages it claim[ed].” It noted that, under the terms of ETI’s contract with the State, the building was scheduled for completion prior to ETI’s initial contact with Buck Steel. Clearly, the delay in the completion of the Project was not solely related to Buck Steel’s failure to timely provide acceptable drawings.
In finding that Buck Steel was entitled to retain the sums paid to it by ETI, the trial court noted concern “with ETI’s failure to notify Buck [Steel] of its dissatisfaction” and also that, due to “the fact that ETI entered into its contract with USA without any attempt at trying to recover its prior deposits from Buck [Steel],” this “suggested] that ETI knew that that money was lost to it.”
After a review of the record, we find no manifest error in this ruling. As we have noted, the Contract called not only for the sale of materials to be used in the construction of the metal building, but also for Buck Steel to produce engineered stamped drawings. The Contract did not, however, separate the charges for the |14various items; thus, while the lump sum for the *448 Contract was $87,632,00, there is no differentiation of the charges for preparing the drawings as opposed to the costs for the materials. Nor was there any trial testimony indicating a breakdown of these costs.
Because Buck Steel did prepare two sets of drawings for the Project, despite their lack of approval by the architects and engineers, we agree with the trial court that Buck Steel is entitled to be paid for the work it performed. We find the circumstances of this case analogous to general breach of construction contracting cases, which hold that:
If the plaintiff has substantially performed his contract with the defendant, then he is entitled to be paid. If his work under the contract is faulty or defective, he is still entitled to be paid under the terms of his contract, and the defendant’s right if the work has not been completed is to finish it or if it is faulty or defective to make the necessary correction and charge the cost thereof to the plaintiff.
D’Avy v. Briley, 72 So.2d 758, 760 (La. App. 1 Cir. 1954). Similarly, this Court has held:
,.. [W]ell settled is the rule that in fixed price contract cases where a contractor has substantially performed the contract he is entitled to recover the contract price while the owner is entitled to recover the cost of correction and completion. Where there has been no substantial performance the contractor is entitled to recover from the owner in quantum meruit.
Planning Sys. Corp. v. Murrell, 374 So.2d 719, 722 (La. App. 4 Cir. 1979). See also, Acadiana Health Club, Inc. v. Hebert, 469 So.2d 1186, 1190 (La. App. 3d Cir. 1985)(“if there has not been substantial performance, the owner is entitled to damages and may rescind the contract and require return to the status quo”).
11fiBased on the foregoing, we find no manifest error in the trial court’s finding that Buck Steel was entitled to be paid for the work it performed. Here, rather than continuing to work with Buck Steel to ensure that the drawings were ultimately approved, ETI retained another company to take over the object of its contract with Buck Steel and then terminated its relationship with Buck Steel.

Trial court’s failure to award costs

While ETI concedes that trial court has “great discretion” in awarding costs, ETI nevertheless maintains that the trial court erred in ordering each party to bear its own costs. It reasons that, because the trial court found a breach of the Contract solely on Buck Steel’s part, Buck Steel should have been ordered to pay ETI’s costs.
Louisiana Code of Civil Procedure article 1920 governs the awarding of costs by the trial court and provides as follows:
Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause, Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
As our jurisprudence indicates, “[t]he assessment of costs lies within the trial court’s discretion, and that assessment of costs is to be reversed only if the trial court abuses that discretion.” Delaney v. Whitney Nat. Bank, 96-2144, 97-0254 (La.App. 4 Cir. 11/12/97), 703 So.2d 709, 720. This Court has repeatedly held that, while the general rule is that the party cast in judgment should be taxed with costs, the trial court has discretion to assess costs in any equitable manner. Lakewood Prop. Owners’ Ass’n v. Smith, 14-1376, p. 25 (La.App. 4 Cir. 12/23/15), 183 So.3d 780, 795, writ denied, 2016-0138 (La. *449 2/26/16), 187 So.3d 469, citing 11 Rubenstein v. City of New Orleans, 07-1211, p. 6 (La.App. 4 Cir. 4/30/08), 982 So.2d 964, 968; See also, Miralda v. Gonzalez, 14-0888, p. 31 (La.App. 4 Cir. 2/4/15), 160 So.3d 998, 1017; Amato v. Office of Louisiana Com’r of Sec., 94-0082, p. 12 (La.App. 4 Cir. 10/3/94), 644 So.2d 412, 419. Likewise, the “the trial court has discretion to deny costs [even] to the prevailing party.” Lakewood Prop. Owners’ Ass’n, 14-1376, p. 25, 183 So.3d at 795.
We recently noted in Miralda, when the “record is devoid of any indication as to why the trial court declined to tax [the non-prevailing party] with all the costs.... we are unable to conclude that the trial court abused its discretion in condemning each party to bear his own costs.” Miralda, 14-0888, p. 32, 160 So.3d at 1018. In the instant matter, the record contains no information as to the trial court’s decision to cast each party with its own costs. We therefore cannot find an abuse of the trial court’s discretion in failing to award all costs to ETI. We also note that the judgment is favorable to Buck Steel as well, in that the judgment specified that Buck Steel could retain the sums paid to it by ETI (in other words, it failed to order Buck Steel to return those sums, as prayed for by ETI), particularly when the judgment is favorable, in certain respects, to both parties.
CONCLUSION
For the reasons set forth herein, we affirm the trial court’s judgment.
AFFIRMED
LOBRANO, J., CONCURS IN THE RESULT.

. In its Reasons for Judgment, the trial court specified that the damages awarded to ETI consisted of the following: $21,155.32 for the “increased amount paid to USA [the subcontractor which replaced Buck Steel] after ETI fired Buck [Steel]" and $25,039.00 for the “amount of unused steel ETI paid for but could not use.”

. Buck Steel conceded the mathematical error in the trial court’s judgment.

. The judgment also noted: (1) that the trial court’s prior “conclusion that Buck Steel did not receive Addendum # 2 before 26 March 2012 is not clearly contrary to the law and evidence;” (2) that "allowing Buck Steel to retain the deposits under the contract is not contrary to the law and evidence;” and (3) that its finding "that Buck Steel is a vendor is not contrary to the law and evidence.”

.See, e.g., Landis Const. Co. v. St. Bernard Par., 14-0096, p. 5 (La.App. 4 Cir. 10/22/14), 151 So.3d 959, 963, writ denied, 14-2451 (La. 2/13/15), 159 So.3d 467.

. La. R.S. 37:2150.l(4)(a) defines "contractor” as "any person who undertakes to, attempts to, or submits a price or bid or offers to construct, supervise, superintend, oversee, direct, or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, or furnishing labor, or furnishing labor together with material or equipment, or installing the same for any building, highway, road, railroad, sewer, grading, excavation, pipeline, public utility structure, project development, housing, or housing development, improvement, or any other construction undertaking for which the entire cost of same is fifty thousand dollars or more when such property is to be used for commercial purposes other than a single residential duplex, a single residential triplex, or a single residential fouiplex ...."

. The "building price” lists the following items: base building as per engineering specifications, closure strip package, engineered stamped drawings, anchor bolt plans, letter of certification, 7 door canopies, gutters, downspouts and building and accessory freight.

. This was the conclusion of the trial court, which in its reasons for judgment noted that, although the "agreement mentioned the erection of the steel structure, the amount set forth in the Contract does not include that part of the agreement... ETI understood, when they signed the agreement, that Buck [Steel] had no responsibility for the erection of the structure,”

.The erecting contract contained in the record was signed only by ETI.

. The trial court rejected Buck Steel’s contention that ETI breached the contract when it retained USA to replace Buck Steel prior to terminating its relationship with Buck Steel and, similarly, rejected Buck Steel’s demand for liquidated damages as provided in the terms and conditions of the contract.