Judge Tiffany G. Chase
Appellants, Marie P. Schelfhaudt, Renée M. Means, and Amy E. Meunier (collectively the "Schelfhaudt Heirs"), appeal the trial court's October 15, 2018 judgment assigning sole liability of a home mortgage debt to the decedent's estate.[1] For the reasons that follow, the judgment of the trial court is affirmed.
FACTUAL AND PROCEDURAL HISTORY
The facts of this case are not in dispute. Mary-Louise Schelfhaudt (hereinafter "Ms. Schelfhaudt") died intestate on June 9, 2017. Relevant to this appeal is the primary *305 asset of Ms. Schelfhaudt's succession, a house on Royal Street in the Bywater neighborhood of New Orleans (hereinafter "the House"). Ms. Schelfhaudt purchased the House on July 30, 1999, and lived there together with appellee, David Stephens (hereinafter "Mr. Stephens"), whom she was in a relationship with for thirty years before her death. An authentic act was executed on October 23, 2001, whereby Ms. Schelfhaudt donated a one-half interest in the House to Mr. Stephens subject to a mortgage in favor of Countrywide Home Loans, Inc.[2]
On December 11, 2014, the home was refinanced by USAA Federal Savings Bank (hereinafter "USAA"). Ms. Schelfhaudt executed a note in favor of USAA promising to repay the sum of $ 143,000 over a period of thirty years at a rate of 3.750% interest per annum (hereinafter "the Note"). Mr. Stephens did not sign the Note. Contemporaneously, a mortgage was executed with USAA encumbering the House (hereinafter "the Mortgage"). Both Ms. Schelfhaudt and Mr. Stephens are listed as "Borrowers" in the Mortgage, and both signed the Mortgage. The Mortgage enumerates a series of covenants wherein the Borrowers agree to various provisions specified in individual sections.[3] Section 35 of the Mortgage, in relevant part, provides:
Each Borrower covenants and agrees that Borrower's obligations and liabilities under this Security Instrument and under the Note shall be joint, several and solidary with all other Borrowers and with each guarantor of the Note (if applicable).[4]
It is the contention of the Schelfhaudt Heirs that this language included in the Mortgage makes Mr. Stephens liable to pay the obligation on the Note.
After Ms. Schelfhaudt's death, Mr. Stephens filed a petition appointing himself independent administrator of her succession. The order appointing Mr. Stephens as administrator was signed by the trial court on November 6, 2017. On December 1, 2017, the Schelfhaudt Heirs filed a motion to remove Mr. Stephens as independent administrator, as they did not consent to his initial appointment. The Schelfhaudt Heirs also requested Mr. Stephens provide an accounting of his activities as administrator. The matter was scheduled for a contradictory hearing on March 9, 2018, wherein the trial court granted the motion, removing Mr. Stephens as administrator *306 and further ordering him to provide the requested accounting. As Mr. Stephens did not timely file his accounting, the Schelfhaudt Heirs filed motions for contempt and to compel discovery.
On May 7, 2018, Mr. Stephens filed his final accounting and requested it be homologated. The accounting listed, among other assets, Ms. Schelfhaudt's undivided one-half interest in the House. It also listed the full amount of the remaining $ 131,885.64 owed on the Note as a debt of the decedent. The Schelfhaudt Heirs filed an opposition contesting the allocation of this debt.
A hearing on the collective issues before the trial court was held on September 18, 2018. Ruling from the bench, and pertinent to this appeal, the trial court held the Mortgage did not obligate Mr. Stephens to pay the debt on the Note and that Ms. Schelfhaudt's succession was solely liable for the total amount owed. The judgment was reduced to writing and signed on October 15, 2018.[5] From this judgment, the Schelfhaudt Heirs appeal.
STANDARD OF REVIEW
The interpretation of a contract is a question of law subject to a de novo standard of review. ETI, Inc. v. Buck Steel, Inc. , 2016-0602, p. 4 (La.App. 4 Cir. 2/1/17), 211 So.3d 439, 442. When appellate review is based upon an examination of a contract on its face, the question is whether the trial court was legally correct or legally incorrect. New Orleans Jazz and Heritage Foundation, Inc. v. Kirksey , 2009-1433, p. 9 (La.App. 4 Cir. 5/26/10), 40 So.3d 394, 401 (citing Clinkscales v. Columns Rehabilitation and Retirement Center , 2008-1312, p. 3 (La.App. 3 Cir. 4/1/09), 6 So.3d 1033, 1035-36 ).
DISCUSSION
The issue on appeal is whether the debt on the Note secured by the Mortgage should be assigned solely to the Schelfhaudt Heirs.
A mortgage is a nonpossessory right created over property to secure the performance of an obligation. La. C.C. art. 3278. It is an accessory obligation that creates a real right to cause the encumbered property to be seized and sold and to have the proceeds applied toward the satisfaction of the primary obligation. La. C.C. arts. 3279 and 3282. In order for the House to serve as security for the Note, Mr. Stephens, as owner of an undivided one-half interest, was required to sign the Mortgage. See La. C.C. arts. 805, 3290, and 3295. Mr. Stephens, relying on La. R.S. 10:3-401, argues that because he did not sign the Note, he did not undertake the obligation to pay it. He contends that his signature on the Mortgage only represents his agreement to provide the House as security for the debt on the Note. The Schelfhaudt Heirs counter that language contained within Section 35 of the Mortgage operates to hold Mr. Stephens solidarily liable on the Note.
An obligation is solidary when each obligor is liable for the whole performance. La. C.C. art. 1794. Solidarity of obligation shall not be presumed and only arises from a clear expression from the intent of the parties. La. C.C. art. 1796. Security devices, such as the Mortgage, should be strictly construed. Ocwen Loan Servicing, LLC v. Porter , 2018-0187, p. 5 (La.App. 4 Cir. 5/23/18), 248 So.3d 491, 496 (citing Durham v. First Guar. Bank of Hammond , 331 So.2d 563, 565 (La.App. 1 Cir. 1976) (citing *307 Thrift Funds Canal, Inc. v. Foy , 242 So.2d 253, 256 (La.App. 4th Cir. 1970) )). A mortgage is an accessory contract made to provide security for the performance of a principal contract. La. C.C. art. 1913. Interpretation of the language in the Mortgage requires us to determine the intent of the parties. See La. C.C. art. 2045. The individual provisions of the Mortgage must be interpreted in light of each other such that each is given meaning as suggested by the document as a whole. La. C.C. art. 2050. Under the foregoing legal and factual framework, we examine the language of Section 35 of the Mortgage.
Contrary to the contention of the Heirs, it is unclear that Section 35 obligates Mr. Stephens to pay the debt on the Note. The relevant language in Section 35 dictates that Mr. Stephens (defined as a "Borrower" in the Mortgage) agrees that his "obligations and liabilities under [the Mortgage] and under the Note shall be joint, several, and solidary with all other Borrowers and with each guarantor of the Note." The Mortgage defines a "Borrower" as "the mortgagor under this Security Instrument." It further defines the Note as "the promissory note signed by Borrower and dated December 11, 2014." Consequently, in defining the "Loan" as "the debt evidenced by the Note," the Mortgage requires that one must look to the Note to determine who is liable for the debt. Mr. Stephens has no obligations or liabilities under the Note. He did not sign the Note and his name does not appear anywhere on that document. Considering the Mortgage in the context of an accessory contract, the absence of Mr. Stephens' signature on the principal contract of the Note indicates he was not intended to be personally bound to Ms. Schelfhaudt's debt.[6]
An examination of Section 35 as a whole suggests it is intended to address the intricacies of Louisiana law regarding solidary obligations - in the event multiple persons signed the Note - and related issues of community property. We do not interpret it to hold Mr. Stephens liable for the principal debt owed by Ms. Schelfhaudt. The Schelfhaudt Heirs acknowledge, but discount as inoperable, Section 13 of the Mortgage that is "modified" by Section 35. Section 13 provides in relevant part:
Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument...
Section 35 does not specify that Section 13 is repealed or replaced in its entirety. Further, Section 34 provides the "Borrower" warrants they have full ownership of the property being mortgaged. Thus, pursuant to La. C.C. art. 805, Mr. Stephens was required to sign the Mortgage as co-owner of the House. Similarly, Section 35 refers to the requirement of a spouse to do the same in the event the property is community-owned. These Sections, read in pari materia , reinforce the principal cause of a mortgage - to pledge one's ownership interest *308 in real property to secure a separate obligation.
We find that Section 35 of the Mortgage, when viewed in context of the document as a whole, does not create an additional obligation that makes Mr. Stephens liable for the debt on the Note. Doubtful provisions must be interpreted in light of the nature of the contract. La. C.C. art. 2053. In signing the Mortgage, Mr. Stephens did nothing more than what is traditionally understood to be the intended purpose of a mortgage: agree to provide his ownership interest in the House as security in the event Ms. Schelfhaudt did not pay her debt on the Note.
DECREE
For the foregoing reasons we affirm the October 15, 2018 judgment of the trial court decreeing that Ms. Schelfhaudt's succession is solely liable for the debt on the Note.
AFFIRMED

Renée Means is party to this suit both individually and in her capacity as independent administratrix of Ms. Schelfhaudt's succession.

The Countrywide mortgage was executed on the same day as the donation. Mr. Stephens was not a signatory to the 2001 note or mortgage.

The sections are divided into two groups. Sections 1 through 21 are termed "universal covenants." Sections 22 through 36 are termed "non-universal covenants" and focus specifically on the laws of Louisiana.

The remainder of Section 35 discusses the applicability of the Note and Mortgage with regard to community property. It provides:
However, to the extent that the Property is community-owned immovable (real) property, and Borrower's spouse co-signs this Security Instrument, but does not co-sign the Note, Borrower's spouse is co-signing this Security Instrument for purpose of: (a) concurring with the granting of this Security Instrument on the community-owned Property (to the extent required under Civil Code Article 2347 ), without obligating the separate property of Borrower's spouse; and (b) waiving any homestead rights to which Borrower's spouse may be entitled under Applicable Law. Notwithstanding the fact that Borrower's spouse did not co-sign the Note, and further notwithstanding the language of Section 13 of this Security Instrument, Borrower's spouse is obligated for payment of the Note and all other sums secured by this Security Instrument to the extent of the spouse's community property interest, and to the extent that the Note is a community obligation.

In the same judgment, the trial court also denied the Schelfhaudt's Heirs' motion for contempt, found the discovery requests to be fully satisfied rendering the motion to compel moot, and granted Mr. Stephens' request to homologate the final accounting.

Section 8 of the Note is entitled "Obligations of Persons under this Note." It provides:
If more than one person signs this Note, each is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.