LAW ENFORCEMENT DISTRICT OF
JEFFERSON PARISH

VERSUS

MAPP CONSTRUCTION, LLC, ET AL

NO. 19-CA-543

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 749-646, DIVISION "E"
HONORABLE FRANK A. BRINDISI, JUDGE PRESIDING


May 29, 2020


**JUDE G. GRAVOIS**
**JUDGE**


Panel composed of Judges Jude G. Gravois,
Robert A. Chaisson, and Hans J. Liljeberg


<u>**AFFIRMED**</u>

**JGG**
**RAC**
**HJL**

COUNSEL FOR DEFENDANT/APPELLANT,
G. M. HORNE, LLC

    Rene S. Paysse, Jr.
    Darren P. Tyus

COUNSEL FOR DEFENDANT/APPELLEE,
CENTRIA SERVICES GROUP, LLC

    Michael M. Meunier
    Timothy R. McGibboney
    James A. Collura, Jr.
    Justin Scott

**GRAVOIS, J.**

In this appeal, appellant, third-party plaintiff G.M. Horne Commercial and Industrial, LLC, argues that the trial court erred in granting Centria Services Group, LLC's peremptory exception of peremption pursuant to La. R.S. 9:2772, dismissing Horne's third-party demand for indemnity against Centria with prejudice. Horne argues that the trial court erred in categorizing the contract between the parties as a construction contract, subject to the five-year peremptive period found in La. R.S. 9:2772, rather than a sales contract. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

This matter arises out of a 2009 construction contract between the Law Enforcement District of Jefferson Parish ("the District"), as owner, and MAPP Construction, LLC, as contractor, for construction of the Jefferson Parish Sheriff's Office Forensic Crime Laboratory building. To accomplish part of said construction, MAPP entered into a subcontract with Horne to supply and install the "Centria Formawall Dimension System"[1] for the exterior walls of the building, along with all of the coordination drawings and shop drawings associated therewith. Horne, a dealer in Centria products, in turn contracted directly with Centria to furnish materials, product application drawings, and delivery of an insulated metal panel system to be manufactured by Centria and installed on the project by a separate contractor.

The laboratory building's construction was accepted by the District as substantially complete on September 23, 2010, as evidenced by a Certificate of Substantial Completion registered in the mortgage office of Jefferson Parish on October 1, 2010. When the laboratory building experienced substantial external

---

[1] The record reflects that the "Centria Formawall Dimension System" is a patented system.

19-CA-543                                    1

water intrusion in 2012 following Hurricane Isaac, MAPP made repairs that were later deemed to be insufficient and/or ineffective. The building thereafter continued to experience water intrusion and leakage, ultimately leading to this suit by the District against MAPP and others for breach of contract, filed on May 13, 2015. In turn, on June 12, 2015, MAPP filed a third-party demand against Horne, appellant herein, and others, alleging that Horne is obligated to fully indemnify and reimburse MAPP if and to the extent that the District proves the existence of defects or deficiencies in any of the materials, work, or performance of Horne on the basis of the allegations set forth in the District's petition and for which MAPP is held liable to the District.

On November 13, 2015, Horne filed a third-party demand against Centria, alleging that Centria was legally obligated to fully indemnify and reimburse Horne "[i]f, and to the extent that [the District] and/or [MAPP] prove the existence of any defects or deficiencies with respect to [Horne's] performance of its contractual obligations to provide the insulated metal system manufactured by Centria and installed on the Project by a separate contractor, and for which [Horne] is held liable, ... ."

In due course, on December 10, 2018, Centria filed a peremptory exception of peremption, arguing that Horne's third-party demand for indemnification, filed on November 13, 2015, was perempted under La. R.S. 9:2772, having been filed more than five years after the filing of the Certificate of Substantial Completion in the mortgage office of Jefferson Parish on October 1, 2010.

Horne opposed the exception, arguing that the contract between the parties was one of sale, rather than one of construction, and thus the contract was not subject to the five-year peremptive period found in La. R.S. 9:2772. Multiple reply memoranda and sur-reply memoranda were also filed. The exception was heard on May 22, 2019, after which the parties filed post-trial memoranda. The trial court

ultimately rendered judgment with reasons on July 31, 2019, granting Centria's exception and dismissing Horne's third-party demand against Centria with prejudice. This timely appeal followed.

On appeal, Horne argues that the trial court erred in finding that the contract between Horne and Centria was a construction contract, rather than a sales contract, thereby subjecting the contract to the five-year peremptive period found in La. R.S. 9:2772. Horne also argues that the trial court failed to view the facts in a light most favorable to them, as required by law. Horne also seeks a *de novo* review on appeal. For the following reasons, we affirm.

## ANALYSIS[2]

### *Standard of review*

Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period. La. C.C. art. 3458. The function of the peremptory exception is to have the plaintiff's action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action. La. C.C.P. art. 923. Peremption may not be renounced, interrupted, or suspended. La. C.C. art. 3461.

Peremptive statutes are strictly construed against peremption and in favor of the claim. Of the possible constructions, the one that maintains enforcement of the claim or action, rather than the one that bars enforcement should be adopted. *Rando v. Anco Insulations Inc.*, 08-1163 (La. 5/22/09), 16 So.3d 1065, 1083.

The standard of review of a trial court's ruling on a peremptory exception of prescription generally turns on whether evidence is introduced. *DeFelice v. Federated National Insurance Company*, 18-374 (La. App. 5 Cir. 7/9/19), 279

---

[2] Horne's arguments on appeal are interrelated and therefore are addressed together.

So.3d 422, 426 (citing *Wells Fargo Financial Louisiana, Inc. v. Galloway*, 17-413 (La. App. 4 Cir. 11/15/17), 231 So.3d 793, 800).  When no evidence is introduced, appellate courts review judgments sustaining an exception of prescription *de novo*, accepting the facts alleged in the petition as true.  *Id.* (citing *Wells Fargo*, 231 So.3d at 800; *Lennie v. Exxon Mobil Corporation*, 17-204 (La. App. 5 Cir. 6/27/18), 251 So.3d 637, 642, *writ denied*, 18-1435 (La. 11/20/18), 256 So.3d 994).  Normally, when evidence is introduced at a hearing on an exception of prescription, the trial court's findings of fact are reviewed under the manifest error standard.  *Id.* (citing *Wells Fargo*, 231 So.3d at 800; *Tenorio v. Exxon Mobil Corp.*, 14-814 (La. App. 5 Cir. 4/15/15), 170 So.3d 269, 273, *writ denied*, 15-1145 (La. 9/18/15), 178 So.3d 149).  However, when evidence is introduced but the case involves only the determination of a legal issue, not a dispute regarding material facts, an appellate court must review the issue *de novo*, giving no deference to the trial court's legal determination.  *Id.* (citing *Wells Fargo*, 231 So.3d at 800; *Cawley v. National Fire & Marine Ins. Co.*, 10-2095 (La. App. 1 Cir. 5/6/11), 65 So.3d 235, 237).

At the hearing on the exception, Centria introduced both documentary and testimonial evidence;[3] Horne introduced documentary evidence, but did not introduce any testimonial evidence.  Although evidence was introduced at the hearing, Horne asserts on appeal that the material facts in this case are not disputed.  Horne asserts that based on the undisputed material facts presented, its contract with Centria is a sales contract, rather than a construction contract.  Thus, the standard of review herein should be *de novo*, rather than manifest error, and this Court should give no deference to the trial court's legal conclusion, citing *DeFelice v. Federated Nat'l Ins. Co.*, *supra*.  Upon review, we agree.  We find that

---

[3] At the hearing, Centria introduced the deposition testimony of Robert Rutherford, its regional distribution manager.

there is no dispute between the parties as to the material facts giving rise to Centria's peremptory exception of peremption. Horne does not dispute the extent of Centria's actions in complying with its subcontract with Horne. The only issue that must be resolved is whether the undisputed facts of the case clearly present a contract that is governed by the peremptive period found in La. R.S. 9:2772, and accordingly, whether the trial court properly granted Centria's peremptory exception of peremption. Our review of the trial court's decision on the exception will therefore be *de novo*.

### *Construction contract versus sales contract*

On appeal, Horne argues that the trial court erred in finding that the contract between Horne and Centria was a construction contract, rather than a sales contract, thereby subjecting the contract to the five-year peremptive period found in La. R.S. 9:2772.

The statute at issue in this case, La. R.S. 9:2772, provides, in pertinent part:

A. Except as otherwise provided in this Subsection, *no action*, whether ex contractu, ex delicto, or otherwise, including but not limited to an action for failure to warn, *to recover on a contract, or to recover damages, or otherwise arising out of an engagement of planning, construction, design, or building immovable or movable property* which may include, without limitation, consultation, planning, designs, drawings, specification, investigation, evaluation, measuring, or administration related to any building, construction, demolition, or work, *shall be brought against any person* performing or furnishing land surveying services, as such term is defined in R.S. 37:682, *including but not limited to* those services preparatory to construction, or *against any person performing or furnishing* the design, planning, supervision, inspection, or observation of construction or *the construction of immovables, or improvement to immovable property*, including but not limited to a residential building contractor as defined in R.S. 37:2150.1:

   (1)(a) *More than five years after the date of registry in the mortgage office of acceptance of the work by owner.*

* * *

B. (1) *The causes which are perempted within the time described above include any action:*

(a) *For any deficiency* in the performing or furnishing of land surveying services, as such term is defined in R.S. 37:682, including but not limited to those preparatory to construction or in the design, planning, inspection, or observation of construction, or *in the construction of any improvement to immovable property,* including but not limited to any services provided by a residential building contractor as defined in R.S. 37:2150.1(9).

(b) For damage to property, movable or immovable, arising out of any such deficiency.

* * *

(3) Except as otherwise provided in Subsection A of this Section, this peremptive period shall extend to every demand, whether brought by direct action or for contribution or indemnity or by third-party practice, and whether brought by the owner or by any other person.

* * *

(Emphasis added.)

In its extensive and detailed written reasons for judgment, the trial court stated:

> … [Centria] argues in its motion that [Horne's] third-party demand against Centria was untimely, pursuant to La. R.S. 9:2772, which provides a five-year peremptive period for cases arising out of construction contracts. The parties do not dispute that [Horne] did not file its third-party demand until after the expiration of the five-year peremptive period. The only issue for the Court to decide is whether the five-year peremptive period applies in this case. This hinges on whether the contract is a construction contract or a sales contract.

> * * *

> In support of its motion, Centria relies heavily on the testimony of Robert Rutherford, Centria's Regional Distribution Manager. [MAPP] lodged an objection to Mr. Rutherford's testimony on the grounds that it was not based on personal knowledge and was unqualified opinion testimony. This Court finds that the objection has merit in regards to the unqualified opinion testimony and disregards any opinion testimony made by Mr. Rutherford regarding legal conclusions drawn. However, a large portion of his testimony was based on his personal knowledge of this project.

> Rutherford testified that Centria uses a team of engineers and drafters to develop designs that suit the needs of each individual project. The panels used on the Jefferson Parish Sheriff's Office Forensic Crime Laboratory were specifically designed and manufactured for this building. The drawings created for this building cannot be used on any other project, nor can the panels manufactured

for this building be used on any other project. Centria's Ex. 7, pp. 16-17. Further, the materials were not manufactured in advance of this project. *Id.* at p. 17.

Rutherford's testimony demonstrated that significant custom design went into the panels. Engineering services were rendered to determine span and loading structural requirements of the project. *Id.* at p. 24. Engineering calculations that determine the support spans and the size and type of tube steels that will be required to hold the load are unique to each project. *Id.* at pp. 25-27. Design and drafting services were provided to determine the fit of the panels. *Id.* at p. 35. The dimensions, including the length, width, and thickness of the panels, are unique to this particular building. *Id.* at pp. 36-37. Both the engineering calculations and panel dimensions are determined by Centria's team, not by the architect or building designers. *Id.* at pp. 38, 40, 164.

The Court notes that Centria published an extensive product catalog showcasing numerous "standard" options for many aspects of their products, which creates an impression that their products are not customized. However, Rutherford explained that these catalogs are marketing tools, aimed at individuals who are not panel experts, to explain how the system works and what features and design options are available. Centria's Ex. 8, p. 34. The Court also notes that a number of parts used to make up the panels were outsourced from third parties. However, the Court finds the extent to which Centria furnished the custom design, engineering, and planning for the panels outweighs these other factors and renders this a contract to build.

For these reasons, the Court finds that the primary obligation in the contract was an obligation "to do," rather than an obligation "to give." As such, La. R.S. 9:2772 applies, rendering the filing of the third party demand untimely. For these reasons, Centria's exception of peremption is granted, dismissing it from this suit with prejudice.

It is undisputed that Horne filed its third-party demand for indemnity against Centria more than five years after the Certificate of Substantial Completion of the subject project was filed in the mortgage records of Jefferson Parish by the District.

La. R.S. 9:2772 applies only to contracts to build, and not contracts of sale. *DeWoody v. Citgo Petroleum Corp.*, 604 So.2d 92, 99 (La. App. 3rd Cir. 1992); *Poree v. Elite Elevator Services, Inc.*, 94-2575 (La. App. 4 Cir. 11/16/95), 665 So.2d 133, 135.

When the "words of a contract are clear, unambiguous, and lead to no absurd consequences, we may not look beyond the contract language to determine the true

intent of the parties." *ETI, Inc. v. Buck Steel, Inc.*, 16-0602 (La. App. 4 Cir. 2/1/17), 211 So.3d 439, 445, *writ denied*, 17-0396 (La. 4/13/17), 218 So.3d 626.

In this case, in its January 6, 2009 Quotation to Horne for the subject project (which was later accepted and confirmed through a Purchase Order from Horne to Centria dated February 26, 2009 and an Invoice from Centria to Horne dated April 16, 2010), Centria proposed "to furnish the material, product application drawings, and delivery for the material requirements for the above project as specified in the Contract Documents[4] for a lump sum price of: $1,392,400.00 … ."[5] Among other terms and conditions, the Quotation called for Centria to provide the following items for the District's laboratory building (as per detailed specifications contained in the nine-page Quotation):

- <u>Formawall Panels</u>, consisting of approximately 31,320 square feet of "Formawall Dimension Series horizontal insulated metal wall panels;"

- <u>Formavue Windows</u>, consisting of approximately 2,710 square feet of "CENTRIA's fixed and thermally broken FV-400 HRS Thru-Tube Window System;"

- <u>Profiled Siding @ Fence</u>, consisting of approximately 1,830 square feet of "20 gage un-insulated BR5-36 horizontal metal siding;"

- <u>Integrated C/S Sunshades</u>, consisting of "Construction Specialties Model DS100-3 Series Sunshade System;"

- <u>Louvers</u>, consisting of approximately 230 square feet of "Construction Specialties Aluminum Louvers, Model DC-6174;" and

- <u>Support Steel Framing System</u>, consisting of "Vertical structural tubes (6" x 2") spaced a maximum of 6'-0" on center at the main field areas

---

[4] The Contract Documents were identified in the Quotation as follows:

This proposal is based upon the following:

A. Drawings: See attached drawing list.

B. Specification Section: 07410 "Exterior Insulated Wall Systems" and 07620 "sheet Metal Flashing & Trim" – no dates.

C. Addenda: Addendum #1 dated 12/2/08, Addendum #2 dated 12/5/08, Addendum #3 dated 12/10/08, Addendum #4 dated 12/19/08, Addendum #5 dated 12/30/08, and Addendum #6 dated 1/5/09.

[5] The Quotation did not include any prices per item, but rather only included a total price of all of the items combined ($1,392,400.00, plus $25,000.00 added "to firm materials shipment to December 31, 2009"). The Invoice, which totaled $1,441,289.00, included total prices per individual item (including "Engineering," "Embeds," "Extra Work," and "Replacement DS Panels" as additional items), but did not specifically break down the costs of labor and materials, respectively.

and a maximum of 5'-0" on center at the corner areas to anchor the Horizontal Formawall Panel/Formavue Window System."

In his testimony, Mr. Rutherford stated that Centria's contract on the laboratory building at issue was on a lump sum basis, rather than on a unit price basis. On lump sum contracts, the owner's professional design team (architects and engineers for the project) provide the plans and specifications that Centria reviews, assesses, and applies its products to that design to determine whether its products will work. Centria then does specific custom drawings based on the architect and engineer plans to not only seek their approval of the layout of the drawings and that Centria is meeting their requirements, but also to generate the bill of materials that eventually goes into Centria's machinery that creates the product.

Mr. Rutherford stated that on lump sum contracts, the drawings from one project cannot be used on another project, and likewise, the materials that are produced for a lump sum project cannot be used on another project. As part of the process, Centria also produces placement or installation drawings ("detailed to, like, an eighth of an inch, so it has to be exact") that cannot be used on another project.[6] Centria then manufactures the materials pursuant to the aforementioned drawings. The manufacturing is specific to each project on a lump sum contract. Centria does not manufacture the materials in advance in a lump sum project. Mr. Rutherford specifically confirmed that Centria manufactured customized products for this particular project.

Mr. Rutherford also confirmed that lump sum contracts include engineering services, and that a "great deal of engineering" went into this particular project, including the span and loading structural requirements of the project.[7] Centria did

---

[6] More than 100 pages of Centria's detailed drawings for this particular project were introduced into evidence at the hearing on the exception.

[7] The Invoice from Centria to Horne introduced into evidence indicates that Centria billed Horne a total of $113,000.00 for "Engineering."

engineering calculations that were custom for this project by determining the support spans, which are always unique between each building. Mr. Rutherford explained "[t]hat's the heavy engineering on the front [end] to make sure every part and piece is going to work, meet code, not fall off the building, keep everybody safe and do its job." The engineering work at issue was unique to this particular project.

Mr. Rutherford also stated that the tube steel, insulated panels, and windows were designed and manufactured specifically for this particular project. All drawings, which were created by Centria's drafting department, were unique to this particular project. Also, all measurements were unique to this particular project.

None of these assertions made by Mr. Rutherford in his testimony were disputed by Horne.

As this Court stated in *Alonzo v. Chifici*, 526 So.2d 237, 241 (La. App. 5th Cir. 1988), *writ denied*, 527 So.2d 307 (La. 6/2/88) (citing *Acadiana Health Club, Inc. v. Hebert*, 469 So.2d 1186, 1189 (La. App. 3rd Cir. 1985)):

> "There are three major factors in determining whether a contract is a contract of sale or a contract to build or to work by the job. First, in a contract to build, the "purchaser" has some control over the specifications of the object. Second, the negotiations in a contract to build take place before the object is constructed. Lastly, and most importantly, a building contract contemplates not only that the builder will furnish the materials, but that he will also furnish his skill and labor in order to build the desired object." (Internal citations omitted.)[8]

Considering the factors set forth in *Alonzo*, and interpreting and construing the language contained in La. R.S. 9:2772 and in the above-noted contract documents between Horne and Centria, and applying the undisputed facts present in this case, upon *de novo* review, for the following reasons, we find no error in the

---

[8] The *Alonzo* case did not concern the applicability of La. R.S. 9:2772, but rather focused, for other reasons, on whether the contract between the parties was one "to build" or one of sale on an open account (a contract to give). However, its analysis of the type of contract involved therein is relevant and pertinent to the issues in this case.

trial court's legal conclusion that the contract between Horne and Centria was a construction contract, *i.e.*, a contract "to build," rather than a contract "of sale." First, the ultimate "purchaser" (here, the District, through its architect), rather than Centria, maintained overall control over the general specifications and construction of the project. Second, the negotiations for the subject contract between Horne and Centria took place well before the component parts for the subject building called for in the contract were designed, built, and delivered by Centria. Lastly and undoubtedly, the contract contemplated not only that Centria would furnish the component parts for the subject building, but would also furnish its skill and labor in order to manufacture and build the component parts to the detailed specifications developed by Centria. *Alonzo*, *supra*.[9]

On appeal, Horne also argues that the trial court failed to view the facts in a light most favorable to them, as required by law. We disagree. In its arguments, Horne focuses extensively on the fact that the contract did not provide for Centria to test or install the subject systems at the construction site, and that such installation was performed by a third-party contractor. We find, however, that Horne takes a much too narrow view of the main object of the contract: for Centria to design, build, and deliver the component parts for the subject building called for in the contract. As confirmed by the undisputed testimony of Mr. Rutherford, the contract, despite not including a provision for Centria to perform the installation, was no mere sale of stock building materials to be incorporated into a building by a third party. Rather, the evidence clearly shows that the main object of the contract was for Centria to design, build, and deliver the wall panel system, the window

---

[9] *Alonzo* also briefly mentions the "value test" for determining whether a given contract is a contract of sale or a construction contract. *Alonzo*, 526 So.2d at 241. Under the "value test," the court determines whether the labor expended in constructing the item, or the materials incorporated therein, constitute the "principal value of the contract." *Id.* Although Horne argues in brief that the "value test" should be used herein, upon review, we find that, in light of the fact that the subject contract is on a lump sum basis rather than on a unit price basis, the record lacks a sufficient specific breakdown of Centria's cost of labor and materials, respectively, in fulfilling the subject contract, thus preventing us from applying the "value test" herein.

system, and the structural support steel framing system that composed much of the building's structure, to the particular plans and detailed specifications developed by Centria for this particular building.

The fact that Centria did not install the items it custom manufactured for this project does not render this contract merely one "of sale." Horne likens Centria's role in this case to "simply providing minimal design services," such as in *ETI, Inc. v. Buck Steel, Inc.*, *supra*. *ETI* concerned interpretation of a contract between the parties, which result would determine whether the plaintiff was entitled to certain types of contractual damages. *Id.*, 211 So.3d at 443. It did not concern the issue of La. R.S. 9:2772's peremption defense to the suit. Defendant Buck Steel was found to be a vendor, not a contractor, based upon the interpretation of its contested contract, which required Buck Steel to furnish a set of "shop drawings" and steel parts which a third party would assemble into a building. Relying on *Alonzo v. Chifici*, cited above, the court held that the contract between ETI and Buck Steel was not a construction contract because it failed to contain any requirements that the alleged builder, Buck Steel, would furnish skills and labor to actually build the product. *Id.* at 445. The case further fails to describe the nature of the steel parts Buck Steel was to supply. As previously found, the product that Centria contracted to provide to Horne, the custom-designed wall, window, and support systems for the laboratory building, including the engineered drawings associated therewith, was considerably more specific than the "steel parts" and "shop drawings" germane in *ETI*.

Horne also argues that the materials and processes used by Centria to make these particular systems were "standard" ones used by Centria in every order it receives. However, it is the actual design, construction, and providing of the systems that is material to the contract, not the nature and substance of the raw materials used in the construction thereof. This assertion is simply an attempt by

Horne to downplay the fact that the finished systems manufactured by Centria for the contract were not "stock" items, but rather were ordered by Horne to be manufactured to the particular detailed specifications developed by Centria.

Horne also argues that La. R.S. 9:2772 was enacted only to protect architects, contractors, and surveyors, not suppliers and manufacturers such as Centria, citing *Burmaster v. Gravity Drainage District No. 2 of St. Charles Parish*, 366 So.2d 1381 (La. 1978). However, *Burmaster*, wherein the Supreme Court considered a constitutional challenge to La. R.S. 9:2772 on the basis that it was a "special" law creating a special privilege or immunity for architects and contractors, drew a distinction between the former group on one hand, and owners, lessors, or tenants on the other hand. In finding the law constitutional, the Supreme Court found that there was "a valid distinction between persons performing or furnishing the design, planning, supervision, inspection or observation of construction or the construction of an improvement to immovable property and a person in possession or control, as owner, lessor, tenant or otherwise, of such improvement at the time of the incident giving rise to the cause of action." *Id.* at 1385. The *Burmaster* court found that it was reasonable that those with access to and control of improvements to immovable property (owners, lessors, or tenants) should not be accorded the protection of the peremptive period established by La. R.S. 9:2772. *Id.* at 1385-86. Considering *Burmaster*, Centria is clearly not an owner, lessor, tenant, or "otherwise" someone who maintained control over their product after its incorporation into the immovable. Thus, *Burmaster* does not stand for the position that an entity such as Centria may not invoke the peremption found in the statute.

Moreover, it is significant that the statute in question does not use specific characterizations such as "architect" or "contractor." By its own terms, the statute states that "no action … shall be brought against *any person* performing … the

construction of immovables, or improvement to immovable property, … ." (Emphasis added.) Clearly, because it designed and manufactured custom components incorporated into an immovable, Centria is the type of entity contemplated by La. R.S. 9:2772. This was also the conclusion of the court in the similar case of *Poree v. Elite Elevator Services, Inc.*, 98-0032 (La. App. 4 Cir. 4/8/98), 711 So.2d 816. In *Poree*, Dover Elevator Services, Inc. ("DES") was the designer of an elevator which was found to be an improvement and a component part of a building. A third-party subcontractor installed and constructed the elevator that became a part of the immovable property, in accordance with the plans and specifications prepared by DES. *Id.* at 818. The court noted that elevators are not a prepackaged, stock product, but are a construction involving multiple components that are assembled into and made part of the building in which they are installed. In *Poree*, the various parts of the elevator were shipped to the installing contractor to be constructed into the building in accordance with the design prepared by DES. *Id.* at 819. Significantly, DES was not involved with the construction, installation, or inspection of the elevator, and provided only its design and engineering. Nevertheless, the court found that DES fell within the ambit of La. R.S. 9:2772's prescriptive period and affirmed the trial court's judgment granting DES's exception and motion for summary judgment. *Id.*

In sum, upon *de novo* review, for the foregoing reasons, based on the undisputed facts presented and the applicable law, we find no error in the trial court's legal conclusion that the contract between Horne and Centria was a construction contract, *i.e.*, a contract "to build," rather than a contract "of sale," and thus, the five-year peremptive period found in La. R.S. 9:2772 is applicable thereto. Accordingly, the trial court did not err in granting Centria's peremptory exception of peremption.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment in favor of Centria Services Group, LLC, and against G.M. Horne Commercial and Industrial, LLC, dismissing Horne's third-party demand for indemnity against Centria as perempted under La. R.S. 9:2772 with prejudice.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **MAY 29, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 19-CA-543

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE FRANK A. BRINDISI (DISTRICT JUDGE)
CHRISTOPHER K. TANKERSLEY (APPELLEE)
ROBERT I. SIEGEL (APPELLEE)
ELLIOT W. SCHARFENBERG (APPELLEE)

DENNIS J. PHAYER (APPELLEE)
TIMOTHY R. MCGIBBONEY (APPELLEE)
DAVID J. KREBS (APPELLEE)

RENE S. PAYSSE, JR. (APPELLANT)
MICHAEL M. MEUNIER (APPELLEE)

### MAILED

CHRISTOPHER R. TESKE (APPELLEE)
ATTORNEY AT LAW
1100 POYDRAS STREET
SUITE 1800
NEW ORLEANS, LA 70163

BRETT M. BOLLINGER (APPELLEE)
L. PETER ENGLANDE (APPELLEE)
ATTORNEY AT LAW
406 NORTH FLORIDA STREET
SUITE 2
COVINGTON, LA 70433

JOHN G. YADAMEC (APPELLEE)
DANIEL M. REDMANN (APPELLEE)
ATTORNEY AT LAW
3838 N. CAUSEWAY BOULEVARD
SUITE 2900
METAIRIE, LA 70002

DARREN P. TYUS (APPELLANT)
ATTORNEY AT LAW
701 POYDRAS STREET
SUITE 4700
NEW ORLEANS, LA 70139

ELTON F. DUNCAN, III (APPELLEE)
MICHAEL T. WAWRZYCKI (APPELLEE)
ATTORNEY AT LAW
400 POYDRAS STREET
SUITE 1200
NEW ORLEANS, LA 70130

MATTHEW K. BROWN (APPELLEE)
ATTORNEY AT LAW
909 POYDRAS STREET
SUITE 2600
NEW ORLEANS, LA 70112